1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES BOWES, BRIAN HIPSHER, S&L
CARTAGE, INC., INTERNATIONAL
LOGISTICS GROUP, INC., M&S FREIGHT
SYSTEMS, INC., and WESTERN
PROVISIONS, INC., on behalf of themselves
and all others similarly situated,

                    Plaintiffs,

    vs.

PACCAR, INC., PACCAR ENGINE
COMPANY, KENWORTH TRUCK
COMPANY, and PETERBILT MOTORS
COMPANY,

                    Defendants.

No. _____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT
Case No.
010754-11/1206105 V1



1

**TABLE OF CONTENTS**

<u>Page</u>

I.     INTRODUCTION ....................................................................................1

II.    JURISDICTION AND VENUE ..............................................................3

III.   THE PARTIES.........................................................................................4

IV.    FACTUAL ALLEGATIONS ...................................................................5

       A.    The Engine and the Emissions Aftertreatment System..................5

       B.    Defendants' representations and the defective nature of the
             Engines.........................................................................................7

       C.    Defendants' knowledge of the defective nature of the Vehicles ...........10

       D.    Defendants' failure to honor warranties covering the Defective
             Vehicles and defective ATS........................................................11

       E.    The warranty terms are unconscionable. ....................................12

       F.    The limited remedies fail of their essential purpose. .................13

       G.    The Plaintiffs and the Class have been injured by the defective
             Vehicles.......................................................................................14

             1.    Plaintiffs Purchased the Defective Vehicles .....................15

V.     TOLLING AND ESTOPPEL ................................................................17

VI.    CLASS ACTION ALLEGATIONS ......................................................20

COUNT I  VIOLATION OF THE WASHINGTON CONSUMER
       PROTECTION ACT (ON BEHALF OF THE NATIONWIDE CLASS)
       (RCWA § 19.86.010, *ET SEQ.*)...............................................................23

COUNT II  BREACH OF EXPRESS WARRANTY (ON BEHALF OF THE
       NATIONWIDE CLASS) (RCWA § 62A.2-313) ................................24

COUNT III  BREACH OF EXPRESS WARRANTY (IN THE ALTERNATIVE,
       ON BEHALF OF THE FLORIDA CLASS) ......................................26

COUNT IV  BREACH OF IMPLIED WARRANTY (IN THE ALTERNATIVE,
       ON BEHALF OF THE FLORIDA CLASS) ......................................28

COUNT V  BREACH OF CONTRACT/COMMON LAW WARRANTY (IN
       THE ALTERNATIVE, ON BEHALF OF THE FLORIDA CLASS)...............29

COUNT VI  VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE
       TRADE PRACTICES ACT (IN THE ALTERNATIVE, ON BEHALF OF
       THE FLORIDA CLASS)...............................................................................30

CLASS ACTION COMPLAINT - i
Case No.
010754-11/1206105 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

COUNT VII  BREACH OF EXPRESS WARRANTY (IN THE ALTERNATIVE,
     ON BEHALF OF THE ILLINOIS CLASS).................................................................32

COUNT VIII  BREACH OF IMPLIED WARRANTY (IN THE
     ALTERNATIVE, ON BEHALF OF THE ILLINOIS CLASS).......................................34

COUNT IX  VIOLATION OF ILLINOIS CONSUMER FRAUD AND
     UNIFORM DECEPTIVE TRADE PRACTICES ACT (IN THE
     ALTERNATIVE, ON BEHALF OF THE ILLINOIS CLASS).......................................36

COUNT X  BREACH OF EXPRESS WARRANTY (IN THE ALTERNATIVE,
     ON BEHALF OF THE OHIO CLASS)........................................................................38

COUNT XI  BREACH OF IMPLIED WARRANTY IN TORT (IN THE
     ALTERNATIVE, ON BEHALF OF THE OHIO CLASS)............................................40

COUNT XII  NEGLIGENT DESIGN/ENGINEERING/MANUFACTURING (IN
     THE ALTERNATIVE, ON BEHALF OF THE OHIO CLASS)....................................42

COUNT XIII  BREACH OF EXPRESS WARRANTY (IN THE
     ALTERNATIVE, ON BEHALF OF THE SOUTH DAKOTA CLASS).........................43

COUNT XIV  BREACH OF IMPLIED WARRANTY (IN THE
     ALTERNATIVE, ON BEHALF OF THE SOUTH DAKOTA CLASS).........................45

COUNT XV  VIOLATIONS OF SOUTH DAKOTA DECEPTIVE TRADE
     PRACTICES ACT (IN THE ALTERNATIVE, ON BEHALF OF THE
     SOUTH DAKOTA CLASS).......................................................................................47

DEMAND ...................................................................................................................................48

DEMAND FOR JURY TRIAL ...................................................................................................49



1   Plaintiffs, James Bowes ("Bowes"); Brian Hipsher ("Hipsher"); S&L Cartage, Inc.

2   ("S&L"), International Logistics Group, Inc. ("International Logistics"), and M&S Freight

3   Systems, Inc. ("M&S"); and Western Provisions, Inc.,  ("Western Provisions") (collectively

4   "Plaintiffs"), bring this action against Defendants PACCAR, Inc., PACCAR Engine Company,

5   Kenworth Truck Company, and Peterbilt Motors Company (collectively "Defendants" or

6   "PACCAR"), by and through their attorneys, individually and on behalf of all others similarly

7   situated, and allege as follows based on: (a) personal knowledge; (b) the investigation of counsel;

8   and (c) information and belief:

9

10                          I.    INTRODUCTION

11      1.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a

12  nationwide class of current and former owners and lessees of Peterbilt or Kenworth trucks and

13  other heavy-duty vehicles containing PACCAR MX-13 diesel engines ("Defective Vehicles" or

14  "Vehicles").  The PACCAR MX-13 engine ("Engine(s)") includes an Emissions Aftertreatment

15  System ("EAS") which include Exhaust Gas Recirculation within the engine section ("EGR")

16  and an Aftertreatment System with integrated systems and their parts and components ("ATS").

17  The Engines with the EAS were produced by Defendants, who jointly developed, designed,

18  manufactured, marketed, assembled, and sold the Vehicles and Engines to comply with the

19  Environmental Protection Agency's ("EPA") 2010 Heavy-Duty On Highway Emissions

20  Standard ("2010 Standard" or "EPA 2010 Emission Standard(s)"), as well as the California Air

21  Resources Board emissions standards, and includes the Model Years ("MY") beginning in 2010.

22      2.    This action arises from Defendants' failure, despite longstanding knowledge, to

23  disclose to Plaintiffs and other customers that the Vehicles are defective and that the EAS and

24  integrated systems, and their parts and components, were and are defective when sold.  The EAS

25  suffers from constant failure under all conditions and applications on a consistent basis, even

26  after repeated warranty repairs.  These repeated warranty repairs and replacements failed to

27  repair and/or correct the defects, resulting in damages to Plaintiffs and the putative Class

28  members.  Damages include, but are not limited to, diminished value of the Vehicles, out-of-

CLASS ACTION COMPLAINT - 1
Case No.
010754-11/1206105 V1

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

pocket costs such as repairs and related hotel/taxi charges, towing charges, and the costs to re-power the Vehicles with suitable replacement diesel engines.

3.      It is important to note what this suit is not about.  This suit is not about the level of emissions from Defendants' Engines, nor is it about the certification of those engines. Plaintiffs do not claim that Defendants violated any provision of the Clean Air Act, nor any regulation promulgated by the EPA.  Plaintiffs do not seek to enforce any provision of the Clean Air Act or regulations promulgated thereunder. Rather, Plaintiffs allege that Engines suffer from a common defect that renders them unreliable, resulting in the Engine failing, derating, or requiring repowering.  This is a defect Defendants knew about, or should have known about, before releasing the Engine into the stream of commerce. The defect is one that Defendants cannot fix and caused Plaintiffs and putative class members to suffer substantial damages.

4.      Defendants were aware, or should have been aware, of truck owner's concerns with excessive "downtime" given the sheer number and scope of repairs and, upon information and belief, truck owner's complaints regarding concerns about the unreliability of the Emissions Controls, and also the lack of proper testing and validation of all aspects of the emissions systems prior to launch in January of 2010.

5.      Additionally, the defects cause the Vehicles to lose power and stop, forcing the driver of the Vehicle to pull to the side of the road and be towed to a PACCAR-authorized repair shop.  This creates a serious safety concern to the drivers of the Vehicles, the occupants of other vehicles, and the public.

6.      As a result of Defendants' unfair, deceptive and fraudulent business practices, as set forth herein, the Vehicles have a lower market value and are inherently worth less than they would be in the absence of the defects.  Plaintiffs and Class members are forced to absorb losses upon purchase and sale of the vehicles due to their defective nature.

7.      For customers with Vehicles within the standard warranty period of 24 months or 250,000 miles, extended warranty, as discussed further below, Defendants have done no more than to temporarily repair the Vehicle or replace a defective component with another equally defective and inherently failure-prone component and/or system, but has not remedied the defect.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  Further, Defendants have refused to take any action to correct the concealed defects when

2  Vehicles continue to experience the same failures again and again, outside the warranty period.

3  Since the defect surfaces well within the warranty period for the Vehicles, and continues

4  unabated after the expiration of the warranty, even where Defendants have made repairs or

5  replaced the EAS components several times and falsely told Class members that their vehicles

6  were repaired—and given Defendants' knowledge of the concealed defect—any attempt by

7  Defendants to limit their warranty with respect to the defect is unconscionable here.

8          8.      As a result of Defendants' unfair, deceptive, and/or fraudulent business practices,

9  owners and/or lessees of the Vehicles, including Plaintiffs, have suffered an ascertainable loss of

10  money and/or property and/or loss in value.

11          9.      Plaintiffs bring this action to redress Defendants' violations of the Washington

12  Consumer Protection laws, and, in the alternative, the California Unfair Competition Law, and

13  seek recovery for Defendants' breach of express warranty.

14                          **II.      JURISDICTION AND VENUE**

15          10.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C.

16  § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds

17  $5,000,000, exclusive of interest and costs, and this is a class action in which Class members and

18  Defendants are citizens of different states.  This Court has supplemental jurisdiction over the

19  state law claims pursuant to 28 U.S.C. § 1367.

20          11.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because

21  certain Defendants are located in this district, transact business in this District and are subject to

22  personal jurisdiction in this District.  Additionally, Defendants have advertised in this District,

23  have headquarters, authorized repair, and other facilities within this District, and have received

24  substantial revenue and profits from the sale and/or leasing of Engines or Vehicles in this

25  District; therefore, a substantial part of the events and/or omissions giving rise to the claims

26  occurred within this District.

27          12.     Defendants designed, and established all design reliability and emissions

28  standards for the Engines in this District.  All decisions by Defendants concerning the testing,

CLASS ACTION COMPLAINT - 3
Case No.
010754-11/1206105 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

validation, and production of the Engines, as well the design, production and distributions, and all warranty claims approval, and warranty data analysis, failure reporting and failure analysis was conducted and supervised by Defendants agents in this District.

13.     This Court has personal jurisdiction over Defendants.  Defendants intentionally and purposefully placed Vehicles with the Engines into the stream of commerce within Washington and throughout the United States.  As such, Defendants have conducted substantial business in this judicial District.

## III.     THE PARTIES

14.     Plaintiff Bowes is a citizen and resident of Illinois, having purchased most if not all of his subject vehicles in the State of Ohio.

15.     Plaintiff Hipsher is a citizen and resident of Florida, having purchased most if not all of his subject vehicles in the state of Florida.

16.     Plaintiffs S&L, International Logistics, and M&S  are each an Illinois corporation with each corporation having a principal place of business in Illinois, and therefore are citizens and residents of Illinois, having jointly purchased most if not all of their subject vehicles in the state of Illinois.

17.     Plaintiff Western Provisions, is a South Dakota corporation with its principal place of business in South Dakota, and therefore a citizen and resident of South Dakota, having purchased most if not all of its subject vehicles in the state of South Dakota.

18.     Defendant PACCAR, Inc. ("PACCAR") is a Delaware corporation headquartered in Bellevue, Washington, and, therefore, is a citizen of Delaware and Washington. PACCAR is the third-largest manufacturer of medium- and heavy-duty trucks in the world and sells tractor-trailer and vocational trucks in the United States and within the state of Washington, and throughout the United States under the names of its subsidiaries, Kenworth and Peterbilt.

19.     Defendant PACCAR Engine Company ("PEC") is a Mississippi corporation with its principal address in Bellevue, Washington, and therefore, is a citizen of Washington and Mississippi. PEC is a subsidiary of PACCAR, which manufactures the Engine.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

20.    Defendant Kenworth Truck Company ("Kenworth") is a division/subsidiary of PACCAR, headquartered in Bellevue, Washington, that markets and sells Kenworth vehicles, many of which utilize the Engine.  Kenworth, therefore, is a citizen of Washington.

21.    Defendant Peterbilt Motors Company ("Peterbilt") is a division/subsidiary of PACCAR, headquartered in Bellevue, Washington, that markets and sells Peterbilt vehicles, many of which utilize the Engine. Peterbilt, therefore, is a citizen of Washington.

## IV.    FACTUAL ALLEGATIONS

### A.    The Engine and the Emissions Aftertreatment System

22.    PACCAR is an international manufacturer of heavy-duty commercial vehicles sold through its divisions/subsidiaries, Kenworth and Peterbilt.  Prior to 2010, Kenworth and Peterbilt Class 8 (vehicles with a gross vehicle weight rating above 33,000 lbs.) heavy-duty vehicles were powered by diesel engines purchased from third parties, such as Caterpillar, Inc.

23.    Beginning in 2010, PACCAR began manufacturing the Engine.  The Engine was adapted in large part from an existing PACCAR engine that was offered internationally and Defendants represent that its ATS, utilizing the Selective Catalyst Reduction ("SCR") technology, has been successfully used for many years and provides a reliable, economical and effective technology.  *See* PACCAR, PACCAR Launches PACCAR MX Engine, *supra* ¶ 4.

24.    In order to meet the EPA 2010 Emission Standard applicable to heavy-duty, on-highway diesel engines, PACCAR jointly designed, manufactured, sold for profit, and warranted the Engines with an EAS emission control unit.[1]

25.    PACCAR's various development, design, engineering, manufacturing, and business units participated in approval of the EAS ultimately used in the Engines. This system includes engine components including an Exhaust Gas Recirculation ("EGR") and electric control units and diagnostic components and systems that would run exhaust gas through the combustion chamber to affect the temperature of exhaust and alter its components. Exhaust would thereafter go through the Aftertreatment System ("ATS"). The ATS was designed to

---

[1] As set forth above, the defect alleged herein only affects the use, operation, and movement of the Vehicles and does not implicate any violation or enforcement of the Clean Air Act or EPA Emissions Standards.



1  perform both passively and actively, and includes two primary, integrated, systems: 1) a Diesel
2  Particulate Filter ("DPF") System; 2) SCR System; and (3) Diesel Oxidation Catalyst ("DOC").

3  26.    The DPF System includes the hydrocarbon doser, DOC, and DPF, and is intended
4  to participate in the reduction of engine soot and particulate matter.

5  27.    The components of the DPF System perform the following functions: 1) the ATS
6  inlet and outlet adapt the Vehicle exhaust piping to the ATS, and also provide a mounting
7  location for the aftertreatment gas temperature sensors; 2) the DPF differential pressure sensor
8  measures the restriction across the DPF; 3) the DPF filters soot out of the exhaust; and 4) when
9  activated, the HC Doser sprays a small amount of diesel fuel (the HC) into the exhaust.  The
10 catalyst in the DOC reacts with the HC to generate heat. The heat is used to clean (regenerate)
11 the DPF by reducing the trapped soot to ash.  Soot is composed of the partially burned particles
12 of fuel that occur during normal engine operation (black smoke).  Over time, both soot and ash
13 accumulate in the DPF and must be removed.  Soot is removed by the regeneration process,
14 while ash is removed by removing the DPF and cleaning it at specified intervals.

15 28.    The SCR System is composed of several main systems and components: 1) Diesel
16 Emissions Fluid ("DEF") Controller; 2) DEF Dosing Unit ("DEF Module"); 3) DEF Dosing
17 Valve; and 4) SCR catalyst.   The SCR System is intended to convert harmful NOx emissions to
18 harmless matter.   The SCR System works by injecting small amounts of a non-toxic, urea-based
19 DEF into the Vehicle's exhaust stream after it exits the DPF.  The exhaust then enters the SCR,
20 where a catalyst reacts with the DEF and NOx, producing nitrogen gas and water vapor, which is
21 expelled from the exhaust.

22 29.    The EAS and integrated systems and their parts and components are materially
23 identical in all Engines.  A schematic of the ATS, from the PACCAR manual, is attached hereto
24 as Exhibit A.

25 30.    Plaintiffs assert that the defect, which was and is known to Defendants, causes a
26 Vehicle to not function as required under all operating conditions, on a consistent and reliable
27 basis, even after repeated warranty repairs and replacements.  These repeated warranty repairs
28 and replacements fail to repair or correct the defect resulting in damages, including, *inter alia*,

diminished value of the Vehicles, and the costs to re-power the Vehicles with diesel engines that are consistently reliable and functioning and are compliant with the EPA Emission Standards.

**B.    Defendants' representations and the defective nature of the Engines**

31.    Defendants made the business decision to investigate, design, manufacture, and sell, for profit, heavy-duty diesel engines that complied with all of the requirements of the EPA 2010 Emission Standard.  The Engines are manufactured by Defendant PEC and specified by Defendants European subsidiary DAF.

32.    In its 2010 Annual Report, PACCAR reported, *inter alia*, that the Engine achieved certification by the EPA and the California Air Resources Board ("CARB") to their stringent 2010 emission standards.  PACCAR also reported that the 400,000-square-foot diesel engine production facility opened in Columbus, Mississippi, during 2010, producing the Engine for the Kenworth and Peterbilt vehicles.  PACCAR further stated that its Engine incorporates precision manufacturing, advanced design, and premium materials to deliver best-in-class performance, durability, reliability, and operating efficiency, and that, in addition to the superior performance and fuel efficiency, the PACCAR Engine reinforces PACCAR's legacy of environmental leadership.

33.    According to its 2014 Annual Report, PACCAR's Mississippi engine factory produced a record number of Engines in 2014.  PACCAR reportedly installed the Engines in over 75,000 Kenworth and Peterbilt trucks since production began in 2010 and, according to Defendants' 2014 Annual Report, customers benefit from the Vehicle's excellent fuel economy, light weight, and reliability.

34.    With respect to its Kenworth trucks, PACCAR reports that Kenworth installs the Engine in over 35 percent of its vehicles due to the Engine's excellent performance, fuel economy, and reliability.

35.    Defendants have consistently asserted in their marketing material that the Engine has a B10 design life of 1,000,000 miles.[2]

---

[2] *See* PACCAR, PACCAR MX-13 Overview, available at
https://PACCARpowertrain.com/products/engines/PACCAR-mx-13/ (last visited May 18, 2018).

CLASS ACTION COMPLAINT - 7
Case No.
010754-11/1206105 V1

36.    PACCAR also capitalized on its reputation and promised that the Engines had been properly tested and tried for reliability and durability, in all climates and operating conditions, and that the Engines had undergone over 300,000 hours of lab testing and 50 million miles of real-world work in North America: according to their website, "PACCAR engines have been tested in all types of applications, climate conditions, and operations."[3]  PACCAR also touted its excellent aftermarket support, low cost of ownership, and its industry leading resale value of its trucks.

37.    But PACCAR's promises did not materialize.  Defendants omitted material information and/or made other materially false and misleading statements concerning the reliability, durability, endurance, and other characteristics of the Engines in the Vehicles, as well as about the warranty coverage and promises to repair the Vehicles.  During the development stage Defendants knew that the Engines' EAS was not going to meet their own Reliability Standards and specifications and would not meet them prior to production, launch and sale. Instead, the Defendants sold the Vehicles with Engines and Emissions Systems that were unreliable, and defective, and that the defect could not be remedied during the terms of the Vehicle warranty, causing them to persistently be disabled and inoperable, among other problems.

38.    The Vehicle's defect and deficiencies stem from the EAS technology that renders the Vehicles unreliable transportation and unsuitable for ordinary commercial use.  The EAS and its integrated systems and their parts and components, generally referred to as the On Board Diagnostic ("OBD"), include computers and sensors and malfunction detection algorithms that continuously monitor the operation of the Vehicle, including the EAS.  Once a malfunction is detected, the malfunction is isolated, and malfunction diagnostic code attributed, which are stored, and Engine operations are first adjusted to remediate the malfunction, if remediation cannot be achieved, an indicator lamp illuminates to inform the driver of the malfunction and exhibit a fault code.  In addition, the fault code, which identifies the likely malfunction, is stored

---

[3] See PACCAR, Manufacturing & Testing, available at
https://paccarpowertrain.com/Products/Engines/technology/manufacturing-testing/ (last visited May 22, 2018).

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

in the Engine control module ("ECM"). The system stores fault codes in order for corrective action to be taken by Defendant authorized repair facilities. The operator is instructed to take the Vehicle into an authorized facility for malfunction identification, and repair. If the operator fails to take the vehicle out of operation, schedule warranty repair, and take (or tow) the vehicle to Defendants' authorized repair facility, the OBD will increase operator "inducements" including power derates or shutdown as required to protect the Engine and ATS. These fault codes are used by the Defendants for troubleshooting and repair.

39.     PACCAR requires that all engine work be done at its authorized dealers. PACCAR states that "factory trained service technicians at over 670 locations in North America are equipped with the proper tools and expertise to keep PACCAR engines running in your trucks. Skilled technicians will provide all routine engine maintenance and quickly troubleshoot and repair all engine issues. Modern, electronic diagnostic tools help the technician accurately diagnose every engine problem by quickly tapping into the engine ECM and pinpointing the problem. PACCAR has the service network that will keep your engines running every day."[4]

40.     Plaintiffs and the members of the Class have repeatedly experienced emissions related performance and reliability problems. Due to inherent deficiencies in the materials, factory workmanship, design, testing, fabrication, and/or manufacture of the ATS, the Vehicles regularly experience numerous fault codes which require servicing. For example, the Engines often manifest problems with their DEF dosers and related systems, sensors, injectors, software, EGR valves, and other critical EAS components. These repairs, which are continuously performed, must be done at one of Defendants' authorized service facilities, which necessitates that the Vehicle be off the road for a period of several days or longer, which is costly for Plaintiffs and Class members.

41.     The EAS is a fully integrated "Series System" controlled by the OBD in such a fashion that all emissions related parts, components and systems, both hardware and software, must function together as a Series, meaning that a failure of any single component of the ATS,

_____

[4] See PACCAR, Parts & Services, available at https://paccarpowertrain.com/parts-services/ (last visited May 22, 2018).

CLASS ACTION COMPLAINT - 9
Case No.
010754-11/1206105 V1

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Engine control or other emissions related system can trigger emissions fault codes, emissions related operator warnings, derates and shutdowns. OBD detection of a malfunction necessitates taking the Vehicle out of operation irrespective of where the malfunction is detected, and whether there was an "actual" failure of any emissions related part of component.

**C.    Defendants' knowledge of the defective nature of the Vehicles**

42.    PACCAR knew and/or should have known of the significant costs to owners and lessees of the Vehicles through customer warranty claims.

43.    PACCAR knew and/or should have known that the EAS and its integrated systems and their parts and components were not sufficiently robust to achieve the represented levels of reliability and durability, but PACCAR did not provide this material information to purchasers.

44.    PACCAR knew and/or should have known well before the sale of the Vehicles about the scope of the defects, but boasted that the Engines were tested for over 300,000 hours of lab testing and 50 million miles of real-world work for reliability and durability, in all climates and operating conditions.

45.    The OBD in each Vehicle was capable of capturing data regarding the operating state of the Engines in real time, recording all out-of-specification operations, detecting fault codes and storing that data for authorized technician troubleshooting, engineering failure analysis, and warranty claims reporting.

46.    Defendants issued numerous Technical Service Bulletins and warranty campaigns relating to, *inter alia*, the EAS, beginning in October 2010.

47.    Defendants also were capable of detecting emissions related Vehicles across the entire fleet as warranty claims were being reported.

48.    Despite knowing that Plaintiffs and the members of the Class bought Vehicles with Engines that failed to perform reliably either wholly, or in substantial part, Defendants responded by authorizing minor adjustments and/or replacement of failed components with other components prone to failure.

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

49.     Defendants have exclusive knowledge or access to material facts about the Vehicles and their Engines that were not and are not known or reasonably discoverable by Plaintiffs and Class members.  Plaintiffs and Class members expect and assume that Defendants will not sell or lease Vehicles with known defects, fail to disclose the defective nature of the Vehicles, or deny the existence of problems.

**D.     Defendants' failure to honor warranties covering the Defective Vehicles and defective ATS**

50.     Defendants warrant the user of every Engine through, *inter alia*, the base Engine warranty.

51.     PACCAR provides a "Base Warranty," which is attached hereto as Exhibit B, for 24 months, 250,000 miles, or 6,250 hours against defects in material and factory workmanship, which is referred to as a "Warrantable Failure," pursuant to which it will provide parts, components, or labor necessary to "repair the damage to the Engine."[5]  The base warranty is part of the price of the Vehicles that Plaintiffs and the Class purchased and there is no additional consideration received for the base warranty, nor could it be refused, as it is part of the purchase of the Vehicle, and Plaintiffs and all Class members rely on the existence of a warranty.

52.     The base warranty is part of the operations manual, which is located in each Defective Vehicle.  Accordingly, the relevant warranties are provided to the purchasers, including Plaintiffs, without providing them with any opportunity to negotiate their terms.

53.     Defendants did not provide disclosure about the problems and defects set forth herein, which were known to Defendants at the time of sale to Plaintiffs.  Defendants' warranties are unenforceable and unconscionable for this reason.  As a result, Plaintiffs did not receive the Vehicles as expressly warranted by Defendants.

54.     Given the Defendants' knowledge of the problems and defects, the warranty disclaimers and durational and damage limitations contained in Defendants' warranty are also unconscionable because the Plaintiffs had no meaningful choice in determining those time

---

[5] The warranty is non-negotiable and states it covers only defects in "material or factory workmanship." PACCAR also sells, for additional consideration, warranty extension contracts, which contain the same coverage limitation.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    limitations or disclaimers, there was a gross disparity in bargaining power and knowledge

2    between Defendants and Plaintiffs, and the terms of the warranties unreasonably favored

3    Defendants.

4        55.    In performing emissions related warranty repairs, PACCAR has never rejected

5    repairing an emission-related defect because it was not one of "material or workmanship" and

6    the warranty repairs are performed time and time again, without objection and pursuant to the

7    warranty terms.

8        56.    However, the Vehicles repeatedly experienced emissions related malfunction

9    detections, check engine lights requiring taking the Vehicles out of service, power deratings and

10   Engine shut downs that were not corrected by the repeated warranty work performed.  These

11   repeated and frequent failures cause the Vehicles to be unreliable, and in spite of numerous

12   attempts, the failures have not and cannot be corrected.  The numerous and frequent failures

13   cause warning lights to come on and the Vehicles to derate and shutdown, necessitating costly

14   and time-consuming emissions and standard warranty repairs.  The derates and shutdowns force

15   the Vehicles to pull off the road and/or immediately proceed to a PACCAR repair facility.  These

16   failures render the Vehicles unreliable and unsafe for transportation because the Vehicles do not

17   and cannot work properly or run reliably or effectively.

18       57.    By failing to correct the defect in the Vehicle, and in spite of repeated, frequent

19   attempts, Defendants have breached the express written base warranty and any extended

20   warranties.  By their conduct, Defendants have also violated their statutory obligations.

21   **E.    The warranty terms are unconscionable.**

22       58.    The warranty was unilaterally drafted by Defendants without any negotiation or

23   opportunity for input from Plaintiffs or any Class member.  All terms of the express warranty,

24   including the unilaterally imposed durational and damage limits, were offered by Defendants on

25   a "take it or leave it" basis and without affording any of the Plaintiffs or Class members any

26   meaningful choice in bargaining for the terms of warranty coverage.

27       59.    Defendants, as the manufacturer and retailers of the Vehicles, knew and

28   concealed at the time that they unilaterally imposed the terms of their express warranty

CLASS ACTION COMPLAINT - 12
Case No.
010754-11/1206105 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

(including the warranty's durational and damage limits), that their Engines were defective and would fail repeatedly, initially during and then subsequently beyond the warranty repair period. Defendants also knew and concealed, at the time that it unilaterally imposed the limits on the express warranty, they were not able to properly perform the warranty service that they had contracted to offer, thereby leaving the Vehicles defective both within and outside the warranty durational limits unilaterally imposed by Defendants. Defendants also concealed and failed to disclose this knowledge to any Class member and took affirmative steps to conceal this knowledge by continuing to tout the supposed superior attributes and qualities of the Engine and their repairs/alterations thereof.

60.    Because (l) there was no opportunity for bargaining the terms of the warranties (including their durational limits); (2) Defendants concealed, during the transactions giving rise to the offering of the express warranties, Defendants' unique and superior knowledge as to the defective nature of the Vehicles, the propensity of the Engines to malfunction during and after the durational limits, and Defendants' inability to offer adequate warranty repair service; and (3) Plaintiffs and Class members had no meaningful choice but to accept Defendants' unilaterally imposed warranty terms, the durational and damage limits imposed unilaterally by Defendants as part of their warranties are procedurally and substantively unconscionable and hence unenforceable.

**F.    The limited remedies fail of their essential purpose.**

61.    Given the inherently defective nature of the Vehicles, and their propensity to malfunction (or continue to malfunction) and require inordinately expensive repairs shortly after the expiration of the warranty's durational limits unilaterally imposed by Defendants, and given Defendants' non-disclosure and affirmative concealment of these facts, enforcement of the unilaterally imposed durational and damage limits of the express warranty would so oppress and surprise the innocent Plaintiffs and Class members as to render these durational and damage limits unconscionable and hence unenforceable.

62.    Under Defendants' warranty, Plaintiffs and members of the Class are entitled to repair and replacement of defective parts. However, because the defects persist after the repairs

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  and replacements authorized by Defendants, and because Defendants knew that these actions

2  were insufficient to cure the numerous issues with the Defective Vehicles, Plaintiffs and

3  members of the Class are left without any remedy under a warranty to correct the Defective

4  Vehicles.  Indeed, Plaintiffs have offered Defendants numerous opportunities to correct the

5  Defective Vehicles, to no avail.  Simply put, Defendants' express warranty fails its essential

6  purpose so that Class members are without the benefit of their primary bargain—a reliable and

7  operational Vehicle.

8        63.     Neither the warranty service provided nor the EAS repairs paid for after a

9  warranty by Plaintiffs at Defendants' facilities fixed the problems with the Vehicles. As a result

10  of Defendants' failure to properly or adequately repair Plaintiffs' Engines during the warranty

11  period or when otherwise obligated by law, Plaintiffs reasonably incurred repair expenses

12  responsive to these issues, and expenses due to the unavailability of the Vehicles, and/or suffered

13  other direct and reasonably foreseeable incidental damages.

14  **G.     The Plaintiffs and the Class have been injured by the defective Vehicles.**

15        64.     Upon information and belief, the design, modification, installation, and decisions

16  regarding the Plaintiffs' and Class members' Vehicles were performed exclusively by

17  Defendants.  The EAS is materially identical in all Vehicles, and Defendants created the EAS so

18  that it could not be disabled or bypassed in any way by anyone other than a PACCAR-

19  authorized technician.

20        65.     Defendants developed the owner's manuals, warranty booklets, and information

21  included in maintenance and repair recommendations and/or schedules for the Engines and the

22  Vehicles.

23        66.     In addition, the defective Emissions Controls resulted in a diminution of the resale

24  value of their Vehicles of, upon information and belief, at least several thousand dollars per

25  Engine.

26        67.     Plaintiffs' Vehicles had continued malfunction detection, check engine lights,

27  breakdowns and shutdowns necessitating delivery of the Vehicles to an authorized PACCAR

28  repair facility for emissions warranty work.  Indeed, Defendants did not release explanations of

1  fault codes, so Plaintiffs and Class members cannot identify the reason for the problems and are
2  forced to bring the Vehicles to Defendants for repairs.

3      68.    In spite of repeated warranty work on the Vehicles, Plaintiffs and members of the
4  Class experienced repeated instances of warning lights illuminating, Engines de-rating and
5  shutting down, sensor, injector, and doser problems, as well as a myriad of system failures that
6  prevented the Vehicles from properly operating under all conditions.

7      69.    Defendants represented to Plaintiffs and Class members that each warranty repair
8  would correct the Vehicle; but after repair, Plaintiffs and Class members continue to experience
9  failures, when PACCAR knew, or should have known, that the failures would continue and the
10 defects on the Vehicle could not be corrected, leading to further shutdowns and continued
11 repairs.

12     70.    Many authorized service centers are unable to obtain the necessary parts, despite
13 warranty obligations, such that some authorized service centers are unable to service the
14 Vehicles or are subject to extensive wait times, during which the Vehicles are out of service.

15     71.    As a result of the parties' unequal bargaining power, PACCAR's superior
16 knowledge of the Defective Vehicle and ineffectual measures, any warranty limitations,
17 including but not limited to, the durational limits and the limits as to how Defendants may
18 remedy defects that are contained in the express warranties, are unconscionable and the
19 warranties fail of their essential purpose; i.e., to provide nondefective, emission related parts and
20 components so that the Vehicle would operate reliably under all operating conditions and all
21 applications.

22     72.    Knowledge of the defect has now permeated the market, leaving Plaintiffs (and all
23 other class members) unable to sell their Vehicles without incurring substantial losses.  On
24 information and belief, even Defendants' own affiliates and/or dealers have recognized the
25 diminished value of these Vehicles.

26     **1.    Plaintiffs Purchased the Defective Vehicles**

27     73.    On or about June, 2015, Bowes purchased a 2012 Kenworth/Peterbilt Vehicle.

28

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

74.    On or about December 2011 and July 2012, Hipsher purchased Kenworth/ Peterbilt Vehicles.

75.    From 2010 through 2013, S&L, International Logistics, and M&S jointly purchased more than 40 Kenworth/Peterbilt Vehicles.

76.    From 2010 through 2012, Western Provisions purchased more than 10 Kenworth/Peterbilt Vehicles.

77.    Plaintiffs have each experienced numerous substantial and repeated identical breakdowns of the Vehicles, specifically with the EAS and integrated systems and their parts and components. On each Vehicle, problems began shortly after the Vehicle was purchased.  Despite bringing the Vehicles to Defendants' repair facilities within the express warranty provisions, the Vehicles have experienced repeated instances of check engine lights, excessive fault code, Engine de-rating and shutting down, sensor, injector, and doser problems, as well as other issues resulting from the defects that prevent the Vehicles from working properly.  Defendants' authorized technician performed the warranty work, but failed to correct the defect despite Defendants' representations that it was fixing the problem.

78.    As a result, Plaintiffs have suffered substantial out-of-pocket damages, as well as damages of at least several thousand dollars at the time of sale resulting from the difference between what Plaintiff (and the market) understood it would be receiving versus what it received as a result of the existence of the defect.

79.    Had Plaintiffs been told of the Vehicle defect it would not have purchased the Vehicles or would have paid less for the Vehicles.

80.    Neither Defendants nor any of their representatives informed Plaintiffs of Defendants' omissions and/or misrepresentations related to the Vehicles.

81.    At all times, Plaintiffs, like all Class members, used their Vehicles in a foreseeable manner and in the manner in which the Vehicle's use was intended.

82.    Plaintiffs and Class members have suffered substantial financial losses and other damages as a result of Defendants' actions and the purchase of the Vehicles.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

83.   Plaintiffs suffered ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Vehicles, including, but not limited to, out-of-pocket loss associated with multiple catastrophic Vehicle failures and attempted repairs to the Vehicle, failure to receive the value bargained for when it purchased the Vehicles, and substantially lower re-sale values associated with the Vehicles.

## V.   TOLLING AND ESTOPPEL

84.   Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that they were injured by Defendants' wrongful conduct as alleged herein.  Because Defendants concealed and failed to disclose the defects with the Engines and its EAS, and because Defendants affirmatively warranted and misrepresented that the EAS was free of defects, Plaintiffs did not and could not have discovered the defect through reasonable diligence.

85.   The applicable statutes of limitations have been tolled by Defendants' knowing and active concealment of the material facts regarding the defective Engine, in particular its EAS, and by Defendants' affirmative warranties and misrepresentations that the emissions system was free of defects. Defendants kept Plaintiffs and the members of the Class ignorant of vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and Class members.

86.   Defendants were (and are) under a continuous duty to disclose to Plaintiffs and the members of the Class the true character, quality, and nature of the Engine. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Engine, including the defective nature of its EAS and the fact that the defect could not be effectively corrected.

87.   Plaintiffs and the Class repeatedly presented their Engines to Defendants' authorized dealerships and repair facilities for failure of the emission-related parts and components.  Ineffectual repairs and replacements were performed only to have the emission-related parts and components subsequently fail.  In each instance Defendants affirmed:

a.      That the emission related parts and component failures were not the result of any application or installation that Defendants deemed improper;

b.      That the emission related parts and component failures did not involve attachments, accessory items or parts not sold or approved by Defendants;

c.      That the emission related parts and component failures were not the result of any improper engine maintenance, repair, wear and tear, neglect, or abuse;

d.      That the emission related parts and component failures were not the result of improper fuel, lubricants or liquids;

e.      That the emission related parts and component failures were not the result of any unreasonable delay in making the Vehicle available after notification of the problem;

f.      That the EAS failures were warrantable; and

g.      That the EAS defects were corrected following repair and replacement.

88.      As such, Defendants are estopped from denying any warranty claims as a result of any limitations in the warranty.

89.      Based on the foregoing, Defendants are also estopped from relying on any statutes of limitation in defense of this action because it did not repair these known defects prior to selling or leasing these Vehicles.

90.      Pursuant to the doctrines of equitable tolling, equitable estoppel, and fraudulent concealment, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose.  With respect to each and every cause of action and count asserted herein, Plaintiffs expressly plead equitable tolling, equitable estoppel, and fraudulent concealment and its application thereto.

91.      Defendants knew that they were performing repeated authorized warranty repairs of the EAS, inducing the operators of the Engines to believe that the defect was warrantable

HB  HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

when they knew or should have known that the failures were the direct result of defects in design

and/or workmanship, and advising those operators after authorized repairs that the defect causing

the failures had been corrected when, in fact, Defendants knew or should have known that the

defect was not and could not be corrected.

92.     Defendants knew, or should have known:

      a.      That the Emissions-related systems of the Engines did not meet Reliability

targets,  standards, specification and Customer expectations prior to sale of

the Vehicles;

      b.      That the Engines would require Defendants' authorized diesel technicians,

and licensed software to repair;

      c.      That commercial Vehicle purchasers and lessees would need to specify the

diesel engine for OEM installation and that Defendants' representations of

performance, reliability, and durability, especially of the emissions controls,

were material to purchasers and lessees of the Engines;

      d.      That commercial vehicle purchasers and lessees, like Plaintiffs and the

Class, would only specify the Engine provided that it was fully warranted

for all defects, including failures of performance of the ATS;

      e.      That commercial vehicle purchasers and lessees of Defendants' Engines

could not specify alternative emission controls to Defendants';

      f.      That the commercial purchasers and lessees would not have the capacity to

repair or replace the Engine emissions controls and would rely upon

Defendants to determine, through pre-sale testing, which Defendants

touted, that the EAS would reliably regenerate under all conditions, in all

applications, for the expected operational life, and would correct any

defects; and



g. That Defendants designed the Engine EAS, drafted the express warranty, accepted repairs to the EAS as warrantable during the warranty period, and knew or should have known that the problems would and did continue because of the defective design.

93. All conditions precedent to the filing of this Complaint have been satisfied. This Complaint has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

94. Defendants are also estopped from relying upon any and all limitations on time, mileage, and type of defect or damages contained in any and all of the warranties because (1) Defendants knew prior to sale that the Engines were defectively designed and unlikely to reliably perform in the real world; and (2) deliberately withheld this information from prospective purchasers.

## VI.    CLASS ACTION ALLEGATIONS

95. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

96. Plaintiffs bring this action on behalf of the following Classes:

**Nationwide Class:** All individuals or entities in the United States, except in New Jersey, Georgia and Texas, who leased or purchased, not for resale, the Vehicles. [6]

In the alternative to a Nationwide Class under the laws of Washington, Plaintiffs bring this action on behalf of the following Classes:

**Florida Class:** All individuals or entities in Florida who leased or purchased, not for resale, the Vehicles.

**Illinois Class:** All individuals or entities in Illinois who leased or purchased, not for resale, the Vehicles.

**Ohio Class:** All individuals or entities in Ohio who leased or purchased, not for resale, the Vehicles.

---

[6] Also excluded are BK Trucking Co. ("BK"), Santelli Trucking, Inc. ("Santelli"), and Rusty Daniel Trucking, Inc. ("Daniel"), who are plaintiffs in an action pending in the District of New Jersey, captioned *BK Trucking Co. v. PACCAR, Inc.*, No. 1:15-cv-02282-JBS-AMD (D.N.J.).

CLASS ACTION COMPLAINT - 20
Case No.
010754-11/1206105 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**South Dakota Class:** All individuals or entities in South Dakota who leased or purchased, not for resale, the Vehicles.

97.    Excluded from the Classes are: (a) Defendants, including any entity in which Defendants have a controlling interest, and their representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Engine; and (c) the Judge to whom this case is assigned.

98.    **Numerosity/Impracticability of Joinder**: The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody and control or otherwise obtained through reasonable means.

99.    **Commonality and Predominance**: There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

a.    whether Defendants engaged in a pattern of fraudulent, deceptive and misleading conduct;

b.    whether Defendants' acts and omissions violated the state consumer fraud acts;

c.    whether Defendants made material misrepresentations of fact or omitted stating material facts to Plaintiffs and the Class regarding the Vehicles;

d.    whether Defendants' false and misleading statements of fact and concealment of material facts regarding the Vehicles were intended to deceive the public;

e.    whether Defendants breached express warranties;

f.    whether, as a result of Defendants' misconduct, Plaintiffs and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief; and

g.    whether the members of the Class have sustained ascertainable loss and damages as a result of Defendants' acts and omissions, and the proper measure thereof.

100.    **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent.  Plaintiffs and members of the Class have been

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    injured by the same wrongful practices in which Defendants have engaged.  Plaintiffs' claims

2    arise from the same practices and course of conduct that give rise to the claims of the members

3    of the Class and are based on the same legal theories.

4        101.    **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and

5    protect the interests of the Class, and have retained class counsel who are experienced and

6    qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests

7    which are contrary to or conflicting with the Class.

8        102.    **Superiority**: A class action is superior to all other available methods for the fair

9    and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class

10   members is economically unfeasible and procedurally impracticable.  While the aggregate

11   damages sustained by the Class are likely in the millions of dollars, the individual damages

12   incurred by each Class member resulting from Defendants' wrongful conduct are too small to

13   warrant the expense of individual suits.  The likelihood of individual Class members prosecuting

14   their own separate claims is remote, and, even if every Class member could afford individual

15   litigation, the court system would be unduly burdened by individual litigation of such cases.

16   Individual members of the Class do not have a significant interest in individually controlling the

17   prosecution of separate actions, and individualized litigation would also present the potential for

18   varying, inconsistent, or contradictory judgments and would magnify the delay and expense to

19   all of the parties and to the court system because of multiple trials of the same factual and legal

20   issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that

21   would preclude its maintenance as a class action.  In addition, Defendants have acted or refused

22   to act on grounds generally applicable to the Class and, as such, final injunctive relief or

23   corresponding declaratory relief with regard to the members of the Class as a whole is

24   appropriate.

25       103.    Plaintiffs will not have any difficulty in managing this litigation as a class action.

26

27

28

CLASS ACTION COMPLAINT - 22
Case No.
010754-11/1206105 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT I**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(ON BEHALF OF THE NATIONWIDE CLASS)**
**(RCWA § 19.86.010, *ET SEQ.*)**

104.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

105.    Plaintiffs and Defendants are "persons" within the meaning of the Washington Consumer Protection Act ("WCPA").

106.    At all relevant times material hereto, Defendants conducted trade and commerce within the meaning of the WCPA.

107.    Defendant's actions as set forth above constitute unfair acts or practices committed in the conduct of trade or commerce directed at Plaintiffs and the Class.

108.    Defendant's actions as set forth above constitute deceptive acts or practices committed in the conduct of trade or commerce directed at Plaintiffs and the Class.

109.    Defendants' actions are injurious to the public and impact the public interest because Plaintiff and the Class were injured in exactly the same way as millions of others purchasing and/or leasing PACCAR vehicles as a result of Defendants' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

110.    The WCPA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

111.    Defendants' practices violated the WCPA for, *inter alia*, one or more of the following reasons:

112.    Defendants concealed from Plaintiffs and the Class the material facts that the Vehicles were defective and, as such, the Vehicles were not of merchantable quality; and

113.    Defendants engaged in unconscionable commercial practices in failing to disclose material information discussed above about the Vehicles.

114.    Defendants consciously omitted or failed to disclose material facts to Plaintiffs and the Class with respect to the Defective Vehicles.



115.    Defendants' unconscionable conduct described herein included the omission and concealment of material facts concerning the Defective Vehicles.

116.    Defendants intended that Plaintiffs and the Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiffs and the Class would purchase and/or lease the Vehicles.

117.    Had Defendants disclosed all material information regarding the Defective Vehicles to Plaintiffs and the Class, they would not have purchased and/or leased the Vehicles, or would have paid less for them.

118.    The foregoing acts, omissions, and practices proximately caused Plaintiffs and the Class to suffer an ascertainable loss in the form of, *inter alia*, added expense to continuously remove, repair, and replace the Defective Vehicles, diminution of value, loss of use of the Vehicles, as well as towing and other expenses, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

119.    Pursuant to RCWA § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as the Class seeks injunctive relief.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (ON BEHALF OF THE NATIONWIDE CLASS)
### (RCWA § 62A.2-313)

120.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

121.    As an express warrantor, manufacturer, and merchant, Defendants each had certain obligations under RCWA § 62A.2-313 to conform the Vehicles and Engine to the express warranties.

122.    When Plaintiffs and the members of the Class purchased and/or leased the Vehicles, Defendants expressly warranted under the base warranty that they would repair Defects in the Engines, which were supposed to be reliable, durable, and economical.

123.    The defects at issue in this litigation were present at the time of sale and lease of the Vehicles to Plaintiffs and members of the Class.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

124.    Defendants breached the express warranties (and continues to breach these express warranties) because they did not (and do not) cover the expenses associated with repairing the Vehicles.  Defendants further breached these express warranties because the same Engines and the same defective EAS and integrated systems and their parts and components were placed in Vehicles during purported repairs.

125.    Pursuant to the express warranties, Defendants were obligated to pay for or reimburse Plaintiffs and the Class members for costs incurred in repairing the defects in the Vehicle.

126.    Pursuant to the express warranties, Defendants also were obligated to properly repair the Vehicles, but were not able to cure the defect.

127.    Defendants have utterly failed and refused to conform the Vehicles to the express warranties, and Defendants' conduct and their knowing concealment of the defects, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

128.    Plaintiffs used the Engines in a manner consistent with their intended use and have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct described throughout this Complaint.

129.    Following repeated failed attempts to have the Vehicles repaired, Plaintiffs placed Defendants on notice each time they brought their Vehicles for ineffective repairs.

130.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

131.    In addition, Defendants have received, on information and belief, thousands of complaints and other notices from customers advising them of the Defective Vehicles at issue in this litigation.

132.    In their capacity as a designer, manufacturer, supplier, and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranty in a manner that would exclude or limit coverage for the Vehicles, for defects present as of the time

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

of sale or lease, which Defendants knew about prior to offering the Vehicles for sale or lease, concealed and did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable and causes the warranty to fail of its essential purpose, and any such effort to disclaim or otherwise limit liability for the defects at issue is null and void.

133.    Accordingly, Plaintiffs and the Class members suffered damages caused by Defendants' breach of the express warranty and are entitled to recover damages as set forth herein.

## COUNT III

### BREACH OF EXPRESS WARRANTY
### (IN THE ALTERNATIVE, ON BEHALF OF THE FLORIDA CLASS)

134.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

135.    As an express warrantor and manufacturer and merchant, Defendants had certain obligations under FLA. STAT. § 672.313 to conform the PACCAR MX-13 engine and its EAS to the express warranties.

136.    When Florida Plaintiffs and the members of the Florida Class purchased and/or leased their vehicles with PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under the Base Warranty that it would repair the damage to the Engine within 24 months, 250,000 miles, or 6,250 hours and provide all parts, components, or labor necessary.

137.    Additionally, when Florida Plaintiffs and the members of the Florida Class purchased and/or leased their vehicles with a PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under the Base Warranty that the Engine is warranted "against defects in material and factory workmanship".

138.    The defect at issue in this litigation was present at the time Vehicles equipped with the PACCAR MX-13 engine were sold and leased to Florida Plaintiffs and members of the Florida Class.



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

139.    Defendants breached their express warranties (and continues to breach these express warranties) because they did not (and have not) corrected the defect with the PACCAR MX-13 engine.

140.    Pursuant to the express warranties, Defendants were obligated to correct the defects in the PACCAR MX-13 engine in the vehicles owned or leased by the Florida Plaintiffs and the Florida Class members.

141.    Although Defendants were obligated to correct the defect with the PACCAR MX-13 engine EAS, none of the purported, attempted fixes to the emissions system are adequate under the terms of the Base Warranty as they did not cure the defect.

142.    Defendants and their agent dealers have failed and refused to conform the PACCAR MX-13 engine to the express warranties. Defendants' conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

143.    Florida Plaintiffs and the members of the Florida Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct as described throughout this Complaint.

144.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

145.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would exclude or limit coverage for the design defect in the PACCAR MX-13 engine and its EAS would be unconscionable. Defendants' warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. Defendants possessed superior knowledge of the defective design of the EAS prior to offering the Engines for sale. Defendants concealed and did not disclose this defect, and Defendants did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.



146.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would result in replacing parts into the defectively designed PACCAR MX-13 engine causes the warranty to fail its essential purpose and is null and void.

147.    Florida Plaintiffs and the Florida Class members have suffered damages caused by Defendants' breach of the express warranties and are entitled to recover damages, including but not limited to diminution of value.

## COUNT IV

### BREACH OF IMPLIED WARRANTY
### (IN THE ALTERNATIVE, ON BEHALF OF THE FLORIDA CLASS)

148.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

149.    Defendants are and were at all relevant times a merchant with respect to the PACCAR MX-13 engine. Defendants directly sold and marketed the PACCAR MX-13 engine to vehicle manufacturers and dealers, like those from whom Plaintiffs and the Florida Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. Defendants knew that the PACCAR MX-13 engine would and did pass unchanged from the vehicle manufacturers and dealers to Florida Plaintiffs and the Florida Class members.

150.    A warranty that the PACCAR MX-13 engine was in merchantable quality and condition is implied by law pursuant to Fla. Stat. § 672.314.

151.    Defendants impliedly warranted that the PACCAR MX-13 engine was of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

152.    The PACCAR MX-13 engine was defective at the time it left the possession of Defendants. The EAS was defectively designed as described herein. Defendants knew of this defect at the time these transactions occurred. Thus, the PACCAR MX-13 engine, when sold and at all times thereafter, was not in merchantable condition or quality and was not fit for its ordinary intended purpose.



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

153.    By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

154.    Florida Plaintiffs and the Florida Class members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

155.    Florida Plaintiffs and the Florida Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct.

156.    Defendants received timely notice regarding the problems at issue in this litigation, both through presentation of Plaintiffs' vehicles at Defendants' technicians for warranty repair work, and through legal proceedings against Defendants. Notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

157.    Florida Plaintiffs and the members of the Florida Class have had sufficient dealings with either Defendants or their agents (authorized PACCAR repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Florida Plaintiffs and the Florida Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

158.    As a direct and proximate result of Defendants' breach of warranties, Florida Plaintiffs and the Florida Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with the PACCAR MX-13 engine, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## COUNT V

### BREACH OF CONTRACT/COMMON LAW WARRANTY
### (IN THE ALTERNATIVE, ON BEHALF OF THE FLORIDA CLASS)

159.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

160.     To the extent Defendants' obligations under the Base Warranty are deemed not to be a warranty under Florida's Commercial Code, Florida Plaintiffs plead in the alternative under common law warranty and contract law. Defendants limited the remedies available to Florida Plaintiffs and the Florida Class to repairs and adjustments needed to correct defects in materials or workmanship, and/or warranted the quality or nature of those parts and services to Florida Plaintiffs.

161.     Defendants breached this warranty or contract obligation by, among other things, failing to repair the defect in the PACCAR MX-13 engine EAS.

162.     Florida Plaintiffs and the Florida Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are intended beneficiaries of Defendants' warranties. The dealers were not intended to be the ultimate consumers of the PACCAR MX-13 engine and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

163.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Florida Plaintiffs and the Florida Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VI**

**VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
(IN THE ALTERNATIVE, ON BEHALF OF THE FLORIDA CLASS)**

164.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

165.     Defendants' business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201, *et seq.*.

166.     At all relevant times, Florida Plaintiffs and all members of the Florida Class were "consumers" within the meaning of the FDUTPA. FLA. STAT. § 501.203(7).

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

167.    Defendants' conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. FLA. STAT. § 501.203(8).

168.    The practices of Defendants, described above, violate the FDUTPA for, *inter alia*, one or more of the following reasons:

a.    Defendants represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.    Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the PACCAR MX-13 engine and its EAS;

c.    Defendants represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.    Defendants engaged in unconscionable commercial practices in failing to reveal material facts and information about the PACCAR MX-13 engine, which did, or tended to, mislead Florida Plaintiffs and the Florida Class about facts that could not reasonably be known by the consumer;

e.    Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.    Defendants caused Florida Plaintiffs and the Florida Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through their conduct;

g.    Defendants failed to reveal material facts to Florida Plaintiffs and the Florida Class with the intent that Florida Plaintiffs and the Florida Class members rely upon the omission;

h.    Defendants made material representations and statements of fact to Florida Plaintiffs and the Florida Class members that resulted in Florida Plaintiffs and the Florida Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

CLASS ACTION COMPLAINT - 31
Case No.
010754-11/1206105 V1



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1          i.      Defendants intended that Florida Plaintiffs and the other members of the

2 Florida Class members rely on their misrepresentations and omissions, so that Florida

3 Plaintiffs and other Florida Class members would purchase vehicles equipped with the

4 PACCAR MX-13 engine.

5      169.    Defendants' actions impact the public interest because Florida Plaintiffs and

6 members of the Florida Class were injured in exactly the same way as thousands of others

7 purchasing and/or leasing the vehicles with PACCAR MX-13 engine as a result of and pursuant

8 to Defendants' generalized course of deception.

9      170.    Had Florida Plaintiffs and other members of the Florida Class known of the

10 defective nature of the PACCAR MX-13 engine, they would not have purchased or leased

11 vehicles equipped with the Engines or would have paid less for them.

12     171.    The foregoing acts, omissions and practices proximately caused Florida Plaintiffs

13 and the other members of the Florida Class to suffer actual damages in the form of, *inter alia*,

14 Diminution in value of the vehicles equipped with PACCAR MX-13 engine, and are entitled to

15 recover such damages, together with all other appropriate damages, attorneys' fees and costs of

16 suit.

### COUNT VII

### BREACH OF EXPRESS WARRANTY
### (IN THE ALTERNATIVE, ON BEHALF OF THE ILLINOIS CLASS)

172.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

173.    As an express warrantor and manufacturer and merchant, Defendants had certain

obligations under 810 Ill. COMP. STAT. 5/2-313 to conform the PACCAR MX-13 engine and its

EAS to the express warranties.

174.    When Illinois Plaintiffs and the members of the Illinois Class purchased and/or

leased their vehicles with PACCAR MX-13 engine (either as new vehicles or as used vehicles

with remaining warranty coverage), Defendants expressly warranted under its Base Warranty

that it would repair the damage to the Engine within 24 months, 250,000 miles, or 6,250 hours

and provide all parts, components, or labor necessary.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

175. Additionally, when Illinois Plaintiffs and the members of the Illinois Class purchased and/or leased their vehicles with PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under its Base Warranty that the Engine is warranted "against defects in material and factory workmanship".

176. The defect at issue in this litigation was present at the time vehicles equipped with the PACCAR MX-13 engine were sold and leased to Illinois Plaintiffs and members of the Illinois Class.

177. Defendants breached the express warranties (and continues to breach these express warranties) because they did not (and have not) corrected the defect with the PACCAR MX-13 engine.

178. Pursuant to the express warranties, Defendants were obligated to correct the defect in the PACCAR MX-13 engine in the vehicles owned or leased by the Illinois Plaintiffs and the Illinois Class members.

179. Although Defendants were obligated to correct the defect with the PACCAR MX-13 engine EAS, none of the purported, attempted fixes to the emissions system are adequate under the terms of the Base Warranty, as they did not cure the defect.

180. Defendants and their agent dealers have failed and refused to conform the PACCAR MX-13 engine to the express warranties. Defendants' conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

181. Illinois Plaintiffs and the members of the Illinois Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct as described throughout this Complaint.

182. Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

183.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would exclude or limit coverage for the design defect in the PACCAR MX-13 engine and its EAS would be unconscionable. Defendants' warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. Defendants possessed superior knowledge of the defective design of the EAS prior to offering the Engines for sale. Defendants concealed and did not disclose this defect, and Defendants did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

184.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would result in replacing parts into the defectively designed PACCAR MX-13 engine causes the warranty to fail its essential purpose and is null and void.

185.    Illinois Plaintiffs and the Illinois Class members have suffered damages caused by Defendants' breach of the express warranties and are entitled to recover damages, including but not limited to diminution of value.

### COUNT VIII

### BREACH OF IMPLIED WARRANTY
### (IN THE ALTERNATIVE, ON BEHALF OF THE ILLINOIS CLASS)

186.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

187.    Defendants are and were at all relevant times a merchant with respect to the PACCAR MX-13 engine. Defendants directly sold and marketed the PACCAR MX-13 engine to vehicle manufacturers and dealers, like those from whom Plaintiffs and the Illinois Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. Defendants knew that the PACCAR MX-13 engine would and did pass unchanged from the vehicle manufacturers and dealers to Illinois Plaintiffs and the Illinois Class members.

188.    A warranty that the PACCAR MX-13 engine were in merchantable quality and condition is implied by law pursuant to 801 Ill. Comp. Stat. 5/2-314 and 5/2A-212.



189.     Defendants impliedly warranted that the PACCAR MX-13 engine were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

190.     The PACCAR MX-13 engine was defective at the time it left the possession of Defendants. The EAS was defectively designed as described herein. Defendants knew of this defect at the time these transactions occurred. Thus, the PACCAR MX-13 engine, when sold and at all times thereafter, was not in merchantable condition or quality and was not fit for its ordinary intended purpose.

191.     By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

192.     Illinois Plaintiffs and the Illinois Class members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

193.     Illinois Plaintiffs and the Illinois Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct.

194.     Defendants received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at Defendants technicians for warranty repair work and through legal proceedings against Defendants. Notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

195.     Illinois Plaintiffs and the Illinois Class members have had sufficient dealings with either Defendants or their agents (authorized PACCAR repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Illinois Plaintiffs and the Illinois Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the PACCAR MX-13 engine and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

196.    As a direct and proximate result of Defendants' breach of warranties, Illinois Plaintiffs and the Illinois Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with PACCAR MX-13 engine, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**COUNT IX**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(IN THE ALTERNATIVE, ON BEHALF OF THE ILLINOIS CLASS)**

197.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

198.    The Illinois Plaintiffs and the Illinois Class members are consumers under the Illinois Consumer Fraud Act and Defendants are "persons" within the meaning of 815 Ill. COMP. STAT. 510/1(5).

199.    Defendants engaged, and continue to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 COMP. STAT. 505/2 and 815 ILCS 510/2.

200.    815 COMP. STAT. 505/2 (Illinois Consumer Fraud Act) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

201.    815 COMP. STAT. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality, or grade… if they are not; … [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

202.    Defendants represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, *inter alia*, that the PACCAR MX-13 engine would run 1,000,000 miles.

203.    Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the PACCAR MX-13 engine and its EAS.

204.    Defendants represented that goods or services were of a particular standard, quality, or grade, when they were of another.

205.    Defendants engaged in unconscionable commercial practices in failing to reveal material facts and information about the PACCAR MX-13 engine, which did, or tended to, mislead Illinois Plaintiffs and the Illinois Class about facts that could not reasonably be known by the consumer.

206.    Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner.

207.    Defendants caused Illinois Plaintiffs and the Illinois Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through their conduct.

208.    Defendants deliberately withheld material facts to Illinois Plaintiffs and the Illinois Class with the intent that Illinois Plaintiffs and the Illinois Class members rely upon the omission.

209.    Defendants made material representations and statements of fact to Illinois Plaintiffs and the Illinois Class members that resulted in Illinois Plaintiffs and the Illinois Class

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  reasonably believing the represented or suggested state of affairs to be other than what they

2  actually were.

3        210.    Defendants intended that Illinois Plaintiffs and the other members of the Illinois

4  Class members rely on their misrepresentations and omissions, so that Illinois Plaintiffs and

5  other Illinois Class members would purchase vehicles equipped with the PACCAR MX-13

6  engine.

7        211.    Had Defendants disclosed the omitted material, Illinois Plaintiffs and other

8  members of the Illinois Class would not have purchased or leased vehicles equipped with the

9  PACCAR MX-13 engine or would have paid less for them.

10       212.    The foregoing acts, omissions and practices proximately caused Illinois Plaintiffs

11  and the other members of the Illinois Class to suffer actual damages in the form of, *inter alia*,

12  diminution in value of the vehicles equipped with PACCAR MX-13 engine.

13       213.    Defendants' conduct was knowing and intentional and with malice and

14  demonstrated a complete lack of care and recklessness and was in conscious disregard for the

15  rights of Illinois Plaintiffs and the Illinois Class Members.

16       214.    As a result of this wrongful conduct, Illinois Plaintiffs and the Illinois Class have

17  been damaged in an amount to be proven at trial, including, but not limited to, actual damages,

18  punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

19       215.    Defendants' conduct as aforesaid was unfair as offensive to public policy,

20  unscrupulous, unethical and immoral, and caused substantial injury to consumers.

21       216.    As a direct and proximate result of Defendants' deceptive, misleading, unfair, or

22  unconscionable practices, as set forth above, Plaintiffs and the other Class members sustained

23  substantial and ascertainable damages in an amount to be determined at trial, including interest

24  on all liquidated sums.

25                                   **COUNT X**

26                         **BREACH OF EXPRESS WARRANTY**
                **(IN THE ALTERNATIVE, ON BEHALF OF THE OHIO CLASS)**

27       217.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

28

CLASS ACTION COMPLAINT - 38
Case No.
010754-11/1206105 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

218.    As an express warrantor and manufacturer and merchant, Defendants had certain obligations under OHIO REV. CODE § 1302.26 to conform the PACCAR MX-13 engine and its EAS to the express warranties.

219.    When Ohio Plaintiff and the members of the Ohio Class purchased and/or leased their vehicles with PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under its Base Warranty that it would repair the damage to the Engine within 24 months, 250,000 miles, or 6,250 hours and provide all parts, components, or labor necessary.

220.    Additionally, when Ohio Plaintiff and the members of the Ohio Class purchased and/or leased their vehicles with the PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under its Base Warranty that the Engine is warranted "against defects in material and factory workmanship".

221.    The defect at issue in this litigation was present at the time vehicles equipped with the PACCAR MX-13 engine were sold and leased to Ohio Plaintiff and members of the Ohio Class.

222.    Defendants breached the express warranties (and continues to breach these express warranties) because they did not (and have not) corrected the defect with the PACCAR MX-13 engine.

223.    Pursuant to the express warranties, Defendants were obligated to correct any defect in the PACCAR MX-13 engine in the vehicles owned or leased by the Ohio Plaintiff and the Ohio Class members.

224.    Although Defendants were obligated to correct the defect with the PACCAR MX-13 engine EAS, none of the purported, attempted fixes to the emissions system are adequate under the terms of the Base Warranty, as they did not cure the defect.

225.    Defendants and their agent dealers have failed and refused to conform the PACCAR MX-13 engine to the express warranties. Defendants' conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

226.    Ohio Plaintiff and the members of the Ohio Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct as described throughout this Complaint.

227.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

228.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would exclude or limit coverage for the design defect in the PACCAR MX-13 engine and its EAS would be unconscionable. Defendants' warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. Defendants possessed superior knowledge of the defective design of the EAS prior to offering the Engines for sale. Defendants concealed and did not disclose this defect, and Defendants did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

229.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would result in replacing parts into the defectively designed PACCAR MX-13 engine causes the warranty to fail its essential purpose and is null and void.

230.    Ohio Plaintiff and the Ohio Class members have suffered damages caused by Defendants' breach of the express warranties and are entitled to recover damages, including but not limited to diminution of value.

## COUNT XI

### BREACH OF IMPLIED WARRANTY IN TORT
### (IN THE ALTERNATIVE, ON BEHALF OF THE OHIO CLASS)

231.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

232.    Defendants are and were at all relevant times a merchant with respect to the PACCAR MX-13 engine. Defendants directly sold and marketed the PACCAR MX-13 engine to



vehicle manufacturers and dealers, like those from whom Plaintiff and the Ohio Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. Defendants knew that the PACCAR MX-13 engine would and did pass unchanged from the vehicle manufacturers and dealers to Ohio Plaintiff and the Ohio Class members.

233.    A warranty that the PACCAR MX-13 engine was in merchantable quality and condition is implied by law pursuant to OHIO REV. CODE § 1302.27.

234.    Defendants impliedly warranted that the PACCAR MX-13 engine was of good and merchantable condition and quality – fit and safe for its ordinary intended use, namely providing reliable transportation.

235.    The PACCAR MX-13 engine was defective at the time it left the possession of Defendants. The EAS was defectively designed as described herein. Defendants knew of this defect at the time these transactions occurred. Thus, the PACCAR MX-13 engine, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

236.    By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

237.    Ohio Plaintiff and the Ohio Class members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

238.    Ohio Plaintiff and the Ohio Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct.

239.    Defendants received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at Defendants technicians for warranty repair work and through legal proceedings against Defendants. Notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

240.     Ohio Plaintiff and the Ohio Class members have had sufficient dealings with either Defendants or their agents (authorized PACCAR repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Ohio Plaintiff and the Ohio Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the PACCAR MX-13 engine and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

241.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Ohio Plaintiff and the Ohio Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with PACCAR MX-13 engine, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## COUNT XII

### NEGLIGENT DESIGN/ENGINEERING/MANUFACTURING
### (IN THE ALTERNATIVE, ON BEHALF OF THE OHIO CLASS)

242.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

243.     Defendants owed Ohio Plaintiff and the Ohio Class a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the PACCAR MX-13 engine against foreseeable malfunctions and to design, engineer and manufacture the Engines and EAS so they would function normally. Defendants also owe a continuing duty to notify Ohio Plaintiff and the Ohio Class of the problem at issue and to repair the defects.

244.     The foreseeable hazards and malfunctions include, but are not limited to, repeated instances of derating and shutdown.

245.     Ohio Plaintiff and the Ohio Class were not aware of the PACCAR MX-13 engine defect described above and its latent shortcomings, or the likelihood of damage therefrom arising in the normal use of vehicles equipped with the Engines.



246. There existed at all relevant times alternative exhaust emission control component designs and engineering which were both technically and economically feasible. Further, any alleged benefits associated with Defendants' defective designs are vastly outweighed by the real risks which include the added expenses foisted upon the Ohio Plaintiff and the Ohio Class by the defect.

247. Defendants did not design, engineer, or manufacture the PACCAR MX-13 engine with reasonable care.

248. The PACCAR MX-13 engine was defective as herein alleged at the time it left Defendants' factories.

249. Defendants breached their duty owed to Ohio Plaintiff and the Ohio Class to design, manufacture, and engineer the Engines to be free of emission related defects.

250. As a direct and proximate result of this breach, Ohio Plaintiff and the Ohio Class have suffered damages.

251. Accordingly, Ohio Plaintiff and the Ohio Class are entitled to recover appropriate damages including, but not limited to diminution of value.

## COUNT XIII

### BREACH OF EXPRESS WARRANTY
### (IN THE ALTERNATIVE, ON BEHALF OF THE SOUTH DAKOTA CLASS)

252. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

253. As an express warrantor and manufacturer and merchant, Defendants had certain obligations under S.D. CODIFIED LAWS § 57A-2-313, *et seq*., to conform the PACCAR MX-13 engine and its EAS to the express warranties.

254. When South Dakota Plaintiff and the members of the South Dakota Class purchased and/or leased their vehicles with PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under its Base Warranty that it would repair the damage to the Engine within 24 months, 250,000 miles, or 6,250 hours and provide all parts, components, or labor necessary.



255.     Additionally, when South Dakota Plaintiff and the members of the South Dakota Class purchased and/or leased their vehicles with PACCAR MX-13 engine (either as new vehicles or as used vehicles with remaining warranty coverage), Defendants expressly warranted under its Base Warranty that the Engine is warranted "against defects in material and factory workmanship".

256.     The defect at issue in this litigation was present at the time vehicles equipped with the PACCAR MX-13 engine were sold and leased to South Dakota Plaintiff and members of the South Dakota Class.

257.     Defendants breached the express warranties (and continues to breach these express warranties) because they did not (and have not) corrected the defect with the PACCAR MX-13 engine.

258.     Pursuant to the express warranties, Defendants were obligated to correct any defect in the PACCAR MX-13 engine in the vehicles owned or leased by the South Dakota Plaintiff and the South Dakota Class members.

259.     Although Defendants were obligated to correct the defect with the PACCAR MX-13 engine EAS, none of the purported, attempted fixes to the emissions system are adequate under the terms of the Base Warranty, as they did not cure the defect.

260.     Defendants and their agent dealers have failed and refused to conform the PACCAR MX-13 engine to the express warranties. Defendants' conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

261.     South Dakota Plaintiff and the members of the South Dakota Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct as described throughout this Complaint.

262.     Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

263.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would exclude or limit coverage for the design defect in the PACCAR MX-13 engine and its EAS would be unconscionable. Defendants' warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. Defendants possessed superior knowledge of the defective design of the EAS prior to offering the Engines for sale. Defendants concealed and did not disclose this defect, and Defendants did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

264.    In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would result in replacing parts into the defectively designed PACCAR MX-13 engine causes the warranty to fail its essential purpose and is null and void.

265.    South Dakota Plaintiff and the South Dakota Class members have suffered damages caused by Defendants' breach of the express warranties and are entitled to recover damages, including but not limited to diminution of value.

**COUNT XIV**

**BREACH OF IMPLIED WARRANTY**
**(IN THE ALTERNATIVE, ON BEHALF OF THE SOUTH DAKOTA CLASS)**

266.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

267.    Defendants are and were at all relevant times a merchant with respect to the PACCAR MX-13 engine. Defendants directly sold and marketed the PACCAR MX-13 engine to vehicle manufacturers and dealers, like those from whom Plaintiff and the South Dakota Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. Defendants knew that the PACCAR MX-13 engine would and did pass unchanged from the vehicle manufacturers and dealers to South Dakota Plaintiff and the South Dakota Class members.

268.    A warranty that the PACCAR MX-13 engine was in merchantable quality and condition is implied by law pursuant to S.D. CODIFIED LAWS §57A-2-314.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

269.    Defendants impliedly warranted that the PACCAR MX-13 engine was of good and merchantable condition and quality – fit and safe for its ordinary intended use, namely providing reliable transportation.

270.    The PACCAR MX-13 engine was defective at the time it left the possession of Defendants. The EAS was defectively designed as described herein. Defendants knew of this defect at the time these transactions occurred. Thus, the PACCAR MX-13 engine, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

271.    By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

272.    South Dakota Plaintiff and the South Dakota Class members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

273.    South Dakota Plaintiff and the South Dakota Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct.

274.    Defendants received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at Defendants technicians for warranty repair work and through legal proceedings against Defendants. Notwithstanding such notice, Defendants have failed and refused to offer an effective remedy.

275.    South Dakota Plaintiff and the South Dakota Class members have had sufficient dealings with either Defendants or their agents (authorized PACCAR repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because South Dakota Plaintiff and the South Dakota Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the PACCAR MX-13 engine and have no rights under the warranty agreements

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

276.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Dakota Plaintiff and the South Dakota Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with PACCAR MX-13 engine, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**COUNT XV**

**VIOLATIONS OF SOUTH DAKOTA DECEPTIVE TRADE PRACTICES ACT**
**(IN THE ALTERNATIVE, ON BEHALF OF THE SOUTH DAKOTA CLASS)**

277.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

278.    Defendants' business acts and practices alleged herein constitute deceptive acts or practices under the South Dakota Deceptive Trade Practices Act ("SDDTPA") S.D. CODIFIED LAWS § 37-24-6.

279.    The practices of Defendants, described above, violate the SDDTPA for, *inter alia*, one or more of the following reasons:

a.    Defendants represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.    Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the PACCAR MX-13 engine and its EAS;

c.    Defendants represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.    Defendants engaged in unconscionable commercial practices in failing to reveal material  acts and information about the PACCAR MX-13 engine, which did, or tended to, mislead South Dakota Plaintiff and the South Dakota Class about facts that could not reasonably be known by the consumer;



e.    Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.    Defendants caused South Dakota Plaintiff and the South Dakota Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through their conduct;

g.    Defendants failed to reveal material facts to South Dakota Plaintiff and the South Dakota Class with the intent that South Dakota Plaintiff and the South Dakota Class members rely upon the omission;

h.    Defendants made material representations and statements of fact to South Dakota Plaintiff and the South Dakota Class members that resulted in South Dakota Plaintiff and the South Dakota Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.    Defendants intended that South Dakota Plaintiff and the other members of the South Dakota Class members rely on their misrepresentations and omissions, so that South Dakota Plaintiff and other South Dakota Class members would purchase vehicles equipped with the PACCAR MX-13 engine.

280.   The foregoing acts, omissions and practices proximately caused South Dakota Plaintiff and the other members of the South Dakota Class to suffer actual damages in the form of, *inter alia*, diminution in value of the vehicles equipped with PACCAR MX-13 engine, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## DEMAND

281.   WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, respectfully request judgment against each of the Defendants:

A.    Certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

B.    Ordering PACCAR to provide notice to the Class of the Vehicle defects;

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1       C.     Ordering PACCAR to promptly repair and/or replace all Vehicle defects

2 free of charge;

3       D.     Awarding all permissible damages;

4       E.     Awarding pre-judgment and post-judgment interest;

5       F.     Awarding statutory damages as permitted by law;

6       G.     Awarding attorneys' fees and costs; and

7       H.     Awarding such other relief as this Court may deem just and proper.

8                  **DEMAND FOR JURY TRIAL**

9 Plaintiffs hereby demand a trial by jury as to all issues so triable.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

| | |
|---|---|
| 1 | Dated: November 5, 2019 |

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  *s/ Steve W. Berman*
    Steve W. Berman (WSBA No. 12536)

*s/ Jerrod C. Patterson*
Jerrod C. Patterson (WSBA No. 43325)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
475 White Horse Pike
Collingswood, NJ  08107
Tel: 856-858-1770
Fax: 866-300-7367
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

Scott R. Shepherd
SHEPHERD, FINKELMAN, MILLER & SHAH,
LLP
35 E. State Street
Media, PA  19063
Tel.: 610-891-9880
Fax: 866-300-7367
sshepherd@sfmslaw.com

John W. Trimble
TRIMBLE & ARMANO
900 Route 168 Suites B1-B2
Turnersville, NJ 08012
Tel.: 856-232-9500
Fax: 856-232-9698
john.trimble@trimbleandarmano.com



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Theodore J. Leopold
Leslie M. Kroeger
COHEN, MILSTEIN
SELLERS & TOLL, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel: 561-515-1400
Fax: 561.515.1401
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY
& AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com

Richard J. Burke
Zachary A. Jacobs
QUANTUM LEGAL LLC
513 Central Avenue, Suite 300
Highland Park, IL 60035
Tel: 847-433-4500
rich@qulegal.com
zachary@qulegal.com

*Attorneys for Plaintiffs*

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594