THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES BOWES *et al.*, | CASE NO. C19-1794-JCC |
| Plaintiffs, | ORDER |
| v. | |
| PACCAR, INC. *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 25). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.   **BACKGROUND**

   **A.  The Parties**

   Plaintiff James Bowes is a citizen and resident of Illinois. (Dkt. No. 1 at 7.) Plaintiff Brian Hipsher is a citizen and resident of Florida. (*Id.*) Plaintiffs S&L Cartage, Inc., International Logistics Group, Inc., and M&S Freight Systems, Inc. are Illinois corporations with principal places of business in Illinois. (*Id.*) Plaintiff Western Provisions, Inc. is a South Dakota corporation with its principal place of business in South Dakota. (*Id.*)

   Defendant PACCAR, Inc. ("PACCAR") is a Delaware corporation with its principal

place of business in Washington. (*Id.*) Defendant PACCAR Engine Company ("PEC"), a subsidiary of PACCAR, is a Mississippi corporation with its principal place of business in Washington. (*Id.*) Defendants Kenworth Truck Company ("Kenworth") and Peterbilt Motors Company ("Peterbilt") are divisions or subsidiaries of Defendant PACCAR, with their principal places of business in Washington. (*Id.* at 8.)

### B. The Engines

Defendants manufacture and sell heavy-duty commercial vehicles. (*Id.*) Beginning in 2010, Defendants began to manufacture PACCAR MX-13 diesel engines ("Engines"). (*Id.* at 4, 8.) The Engines incorporate an aftertreatment system ("ATS") that Defendants have previously included in other vehicles. (*Id.*) The ATS contains a diesel particulate filter ("DPF") system and a selective catalytic reduction ("SCR") system, which control the Engines' emission of nitrogen oxides and particulate matter. (*Id.* at 8–9.) In order to meet the Environmental Protection Agency's ("EPA") 2010 Heavy-Duty On Highway Emissions Standard ("2010 Standard"), Defendants designed, manufactured, sold for profit, and warranted Engines with an Emissions Aftertreatment System ("EAS") emissions control unit. (*Id.* 4, 8.) The EAS includes an exhaust gas recirculation ("EGR") component that assists in altering the temperature and composition of the exhaust. (*Id.*)

In a 2010 annual report, Defendants reported that the Engines were certified by the EPA and the California Air Resources Board. (*Id.* at 10.) Defendants stated that the Engines were durable, high-performing, and efficient. (*Id.*) In a 2014 annual report, Defendants reported that their Mississippi factory had produced a record number of Engines and that over 75,000 Engines had been installed since 2010. (*Id.*) Defendants' marketing material has stated "that the Engine has a B10 design life of 1,000,000 miles" and that the Engines' reliability and durability have been rigorously tested. (*Id.* at 10–11.)

### C. Alleged Engine Defect

Plaintiffs allege that a defect in the Engines causes vehicles containing the Engines

1  ("Vehicles") to not function reliably, even following repeated warranty repairs and replacements.
2  (*Id.* at 11.) The EAS and related systems continuously monitor Vehicles and, upon detection of a
3  malfunction, trigger a malfunction indicator and produce a fault code that is stored in the Engine
4  Control Module ("ECM"). (*Id.*) Engines are designed to attempt to address malfunctions
5  themselves; if a malfunction cannot be adequately addressed, an indicator light informs the
6  Vehicle's operator of the malfunction. (*Id.*) The operator is instructed to take the affected
7  Vehicle to an authorized facility for malfunction identification and repair. (*Id.* at 12.) Defendants
8  require that repair work on Engines be performed at Defendants' authorized dealers, who use the
9  fault codes to identify issues while performing the repairs. (*Id.* at 11–12.) If the operator fails to
10 do so, the Vehicle's on-board diagnostic ("OBD") system "will increase operator 'inducements'
11 including power derates or shutdown as required to protect the Engine and ATS." (*Id.* at 12.)
12 Plaintiffs allege that they and members of the purported class "have repeatedly experienced
13 emissions related performance and reliability problems," including that "the Vehicles regularly
14 experience numerous fault codes which require servicing." (*Id.*)

15 **D.  Defendants' Knowledge**

16 Plaintiffs allege that, prior to selling the Engines, Defendants knew or should have known
17 that the EAS and related systems were not sufficiently robust to meet Defendants'
18 representations about the systems' reliability and durability, that the Engines and EAS were
19 experiencing failures, and that frequent repairs would be required. (*Id.* at 13.) After selling the
20 Vehicles, Defendants were able to track data regarding the Engines' operating states via the
21 OBDs and to detect emissions-related issues as warranty claims were reported. (*Id.*) In response,
22 Defendants issued technical service bulletins and warranty campaigns relating to the EAS,
23 authorized minor adjustments, and/or replaced failed components with components that were
24 similarly prone to failure. (*Id.* at 13–14.) While Defendants knew or should have known about
25 the defects, they did not notify Plaintiffs or members of the purported class. (*Id.*)

26       //

**E. Engine Warranty**

Defendants provide to every user of an Engine a base warranty covering the applicable Engine in the Vehicle's operations manual, which lasts for 24 months, 250,000 miles, or 6,250 hours. (*Id.* at 14; Dkt. No. 1-2.) The base warranty defines "Warrantable Failures" as defects in material and factory workmanship; if a warrantable failure occurs, Defendants will provide the parts, components, or labor required to repair resultant damage to the affected Engine. (Dkt. No. 1 at 14.) The base warranty extends to the first purchaser of a Vehicle and limits the damages that may be recovered. (*See* Dkt. No. 1-2 at 2, 4–5.) The base warranty disclaims any express or implied warranties not included in the base warranty. (*Id.* at 4–6.) The base warranty disclaims all incidental and consequential damages. (*Id.* at 6.)

Defendants performed numerous warranty repairs on the Vehicles pursuant to the base warranty and have "never rejected repairing an emission-related defect because it was not one of 'material or workmanship.'" (Dkt. No. 1 at 15.) But the repeated warranty work did not cure the failures, as the Vehicles "repeatedly experienced emissions related malfunction detections, check engine lights requiring taking the Vehicles out of service, power deratings and Engine shutdowns." (*Id.*) Plaintiffs assert that "[t]hese failures render the Vehicles unreliable and unsafe for transportation because the Vehicles do not and cannot work properly or run reliably or effectively." (*Id.*)

**F. Plaintiffs' and the Class's Experience**

Plaintiff Bowes purchased a Vehicle in June 2015, Plaintiff Hipsher purchased Vehicles in December 2011 and July 2012, Plaintiffs S&L Cartage, International Logistics Group, and M&S Freight Systems purchased Vehicles from 2010 to 2013, and Plaintiff Western Provisions purchased Vehicles from 2010 to 2012. (*Id.* at 18–19.) Plaintiffs' Vehicles have repeatedly broken down or suffered shutdowns, which have required Plaintiffs to deliver the Vehicles to Defendants' authorized dealers for warranty repair work. (*Id.* at 19.) Even after warranty repair work was performed, Plaintiffs' Vehicles continued to exhibit illuminated warning lights;

1   Engines derated or shut down; and Plaintiffs experienced problems with sensors, injectors, and
2   dosers along with other system failures. (*Id.*) Plaintiffs assert that because of the Vehicles' issues
3   they have suffered out-of-pocket damages and damages arising from the diminished values of the
4   Vehicles both at the time of sale and now that the market is aware of the alleged defects. (*Id.* at
5   18–19.) Plaintiffs state that they would have either not purchased the Vehicles or would have
6   paid less for the Vehicles but for Defendants' omissions and misrepresentations related to the
7   Vehicles. (*Id.* at 19.)

8         On November 5, 2019, Plaintiffs filed a class action lawsuit on behalf of themselves and
9   others similarly situated. (*See generally id.*) Plaintiffs purport to bring the action on behalf of a
10  nationwide class which excludes New Jersey, Georgia, and Texas for violations of Washington
11  law. (*See id*. at 23.) In the alternative, Plaintiffs purport to bring the action on behalf of a Florida
12  class, an Illinois class, an Ohio class, and a South Dakota class. (*Id.* at 23–24.) Plaintiffs allege
13  on behalf of the nationwide class that Defendants violated the Washington Consumer Protection
14  Act, Wash. Rev. Code § 19.86.010 *et seq*., and breached an express warranty in violation of
15  Wash. Rev. Code § 62A.2-313. (*Id.* at 26–29.) In the alternative, Plaintiffs allege on behalf of the
16  Florida class that Defendants breached an express warranty in violation of Fla. Stat. § 672.313,
17  breached an implied warranty in violation of Fla. Stat. § 672.314, breached a contract or
18  common law warranty in violation of Florida law, and violated the Florida Deceptive and Unfair
19  Trade Practices Act, Fla. Stat. § 501.201 *et seq*. (*Id.* at 29–35.) In the alternative, Plaintiffs allege
20  on behalf of the Illinois class that Defendants breached an express warranty in violation of 810
21  Ill. Comp. Stat. 5/2-313, breached an implied warranty in violation of 810 Ill. Comp. Stats. 5/2–
22  314 and 5/2A-212, and violated the Illinois Consumer Fraud and Uniform Deceptive Trade
23  Practices Act. 815 Ill. Comp. Stat. 505/2. (*Id.* at 35–41.) In the alternative, Plaintiffs allege on
24  behalf of the Ohio class that Defendants breached an express warranty in violation of Ohio Rev.
25  Code § 1302.26, breached an implied warranty in violation of Ohio Rev. Code § 1302.27, and
26  were negligent in designing, engineering, and manufacturing the Engines under Ohio law. (*Id.* at

41–46.) In the alternative, Plaintiffs allege on behalf of the South Dakota class that Defendants breached an express warranty in violation of S.D. Codified Laws § 57A-2-313, breached an implied warranty in violation of S.D. Codified Laws § 57A-2-314, and violated the South Dakota Deceptive Trade Practices Act, S.D. Codified Laws § 37-24-6. (*Id.* at 46–51.)

Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25.)

## II.   DISCUSSION

### A.   Legal Standard

The court may dismiss a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

A plaintiff must provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

"In alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Iqbal*, 556 U.S. at 686. Under the Rule 9(b) pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Even if the elements of a claim do not include fraud, an allegation of a "unified course of fraudulent conduct" requires

that "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1103–04. "The Rule 9(b) standard is relaxed in fraudulent omission cases," as the plaintiff may not be able to specify the time, place, and specific content of an omission as precisely as a plaintiff claiming false representation. *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010).

### B.     Statutes of Limitations

Defendants move to dismiss several of Plaintiffs' claims as untimely under the applicable statutes of limitation. (*See* Dkt. No. 25 at 17–24.) A motion to dismiss based on the running of the statute of limitations will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

#### 1. Breach of Express Warranty Claims

"An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Wash. Rev. Code § 62A.2-725(1); *see* 81 Ill. Comp. Stat. 5/2-725(1) (setting four-year statute of limitations on action for breach of contract of sale); S.D. Codified Laws § 57A-2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); Fla. Stat. § 95.11(2)(b) (setting five-year statute of limitations for action on written instrument). Generally, a cause of action for breach of an express warranty accrues when the breach occurs, regardless of when the plaintiff learns of the injury or when resulting damages have occurred. *See* Wash. Rev. Code § 62A.2-725(2); 81 Ill. Comp. Stat. 5/2-725(2); S.D. Codified Laws § 57A-2-725(2); *but see Lion Life, LLC v. Regions Bank*, 2013 WL 2367823, slip op. at 1 (S.D. Fla. 2013) ("In Florida, under a breach of contract suit, the cause of action accrues and the statute of limitations begins to run when the last element giving rise to the cause of action takes place."). Thus, under Washington, Illinois, and South Dakota law, a breach of warranty occurs upon delivery unless

the warranty "explicitly extends to future performance" and "discovery of the breach must await the time of such performance," in which case "the cause of action accrues when the breach is or should have been discovered." Wash. Rev. Code § 62A.2-725(2); 81 Ill. Comp. Stat. 5/2-725(2); S.D. Codified Laws § 57A-2-725(2).

The breach of express warranty statutes of Washington, Illinois, and South Dakota explicitly recognize that they do "not alter the law on tolling of the statute of limitations." Wash. Rev. Code § 62A.2-725(4); 81 Ill. Comp. Stat. 5/2-725(4); S.D. Codified Laws § 57A-2-725(4). A court may equitably toll the applicable statute of limitations "when justice requires," as when there is "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998); *accord Ralda-Sanden v. Sanden*, 989 N.E.2d 1143, 1147 (Ill. Ct. App. 2013); *Pitt-Hart v. Sanford USD Med. Ctr.*, 878 N.W.2d 406, 416 (S.D. 2016).

Under Florida law, "[i]f the warranty expires before a plaintiff discovers the breach, then the statute begins to run on the expiration date." *Kaplan v. Volvo Penta of the Americas, LLC*, 2014 WL 6908423, slip op. at 2–3 (S.D. Fla. 2014). The Florida Supreme Court has recognized that Fla. Stat. § 90.501 significantly limits the application of equitable tolling under Florida state law. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074–75 (Fla. 2001); *see also Kelley v. Metro. Life Ins. Co.*, 2013 WL 5797367, slip op. at 3 (S.D. Fla. 2013) (finding breach of contract claim was time-barred under five-year statute of limitation and rejecting argument that Fla. Stat. § 95.051 tolled statute of limitations). But the Florida Supreme Court has also noted that the doctrine of equitable estoppel "presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct" and "bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct." *Morsani*, 790 So. 2d at 1076–77.

Here, the express warranty at issue spanned for 24 months, 250,000 miles, or 6,250 hours

from the date of purchase. (*See* Dkt. No. 1-2 at 2.)[1] Plaintiffs filed their complaint in this action on November 5, 2019. (*See* Dkt. No. 1.) Defendants argue that Plaintiffs' claims for breach of the express warranty are therefore untimely under each applicable statute of limitations, citing the purchase dates alleged in Plaintiffs' complaint. (Dkt. No. 25 at 18–20.)

Plaintiffs' complaint alleges that Defendants were aware of the Engines' defect before selling Engines and that Defendants possessed exclusive knowledge of or access to material facts that Plaintiffs could not have known or discovered with reasonable diligence. (*See* Dkt. No. 1 at 13–14.) Plaintiffs further allege that when they brought Vehicles in for warranty repair work, Defendants represented that the Vehicles' issues were warrantable and that the resultant repairs corrected the issues. (*Id.* at 18, 20–21.) Plaintiffs also assert that Defendants knowingly and actively misrepresented the nature of the Engines' defect and the efficacy of the warranty repair work performed. (*Id.* at 20.) And Plaintiffs explicitly plead that the equitable doctrines of tolling and estoppel apply to their claims. (*See id.* at 20–23.) Thus, the complaint sets forth factual allegations which demonstrate that Plaintiffs may be able to establish that the applicable statutes of limitations may be subject to equitable tolling or equitable estoppel. *See Supermail Cargo*, 68 F.3d at 1207. Accordingly, Defendants' motion to dismiss is DENIED on this ground.[2]

---

[1] In ruling on a motion to dismiss, the court may consider only the pleadings or documents attached to or incorporated by reference in the pleadings. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Rubio v. U.S. Bank N.A.*, 2014 WL 1318631, slip op. at 5 (N.D. Cal. 2014). Plaintiffs have attached the base warranty to their complaint and reference it throughout their complaint. (*See generally* Dkt. Nos. 1, 1-2.) Defendants have attached four limited warranty agreements to their motion to dismiss, two of which were signed by Plaintiff Hipsher and two of which were signed by Plaintiff Western Provisions. (*See* Dkt. No. 25-1 at 3, 6, 9, 12.) Defendants argue that these limited warranties, which provide that Plaintiffs had 12 months in which to bring a lawsuit after a claim accrued, were incorporated by reference in Plaintiffs' complaint. (*See* Dkt. No. 25 at 13–14 & 13 n.6) (citing Dkt. No. 1 at 14). But the cited portion of Plaintiffs' complaint references the base warranty attached thereto, and the base warranty does not appear in any of the limited warranties offered by Defendants. (*Compare* Dkt. No. 1-2 *with* Dkt. No. 25-1 at 2–13.) Therefore, the Court will not consider the limited warranties in ruling on Defendants' motion to dismiss.

[2] Because the Court finds that Plaintiff's complaint establishes a reasonable inference that the statutes of limitations applicable to Plaintiffs' breach of warranty claims may be subject to

### 2. *Breach of Implied Warranty Claims*

Under Ohio, Illinois, and South Dakota law, claims for breach of implied warranty are subject to a four-year statute of limitations. *See* Ohio Rev. Code § 1302.98(A); 810 Ill. Comp. Stat. § 5/2-725(2); S.D. Codified Laws § 57A-2-725(1). Florida law assigns a five-year statute of limitations to such claims. *See* Fla. Stat. § 95.11(2)(b). Generally, a cause of action accrues upon delivery, regardless of the aggrieved party's knowledge; but if the warranty at issue explicitly extends to the future performance of the goods, a cause of action accrues when the breach is or should have been discovered. *See* Ohio Rev. Code § 1302.98(B); *Val Decker Packing Co. v. Corn Prod. Sales Co.*, 411 F.2d 850, 851 (6th Cir. 1969); 81 Ill. Comp. Stat. 5/2-725(2); *Progressive N. Ins. Co. of Illinois v. Ford Motor Co.*, 259 F. Supp. 3d 887, 890 (S.D. Ill. 2017); S.D. Codified Laws § 57A-2-725(2); *City of Lennox v. Mitek Indus., Inc.*, 519 N.W.2d 330, 332–33 (S.D. 1994); *AB CTC v. Morejon*, 324 So. 2d 625, 628 (Fla. 1975). All four statutes of limitations applicable to claims for breach of implied warranty may be tolled or the defendant may be estopped from asserting a statute of limitations defense if the defendant prevented the plaintiff from discovering the facts underlying their cause of action. *See Northern Frozen Foods, Inc. v. Farro*, 138 N.E.3d 1223, 1229–30 (Ohio Ct. App. 2019) (collecting cases); *Clifton v. I-Flow Corp.*, 2011 WL 5077615, slip op. at 3 (N.D. Ill. 2011) (citing 735 Ill. Comp. Stat. 5/13-215 and collecting cases); *Jandreau v. Sheesley Plumbing & Heating Co., Inc.*, 324 N.W.2d 266, 272 (S.D. 1982) (collecting cases); *Morsani*, 790 So. 2d at 1076–77.

Here, Defendants assert that Plaintiffs' various claims for breach of implied warranty are time-barred because the applicable statutes of limitations began to run on the date each Plaintiff purchased the Vehicles at issue. (*See* Dkt. No. 25 at 23.) But, as discussed above, Plaintiffs' complaint explicitly pleads the doctrines of equitable estoppel and equitable tolling, alleges that

---

equitable tolling or estoppel, it declines to reach the parties' arguments regarding the reasonableness or unconscionability of the limitation period in the limited warranties or the application of the discovery rule to Plaintiffs' claims. (*See* Dkt. Nos. 39 at 18–23, 40 at 6–10.)

ORDER
C19-1794-JCC
PAGE - 10

Defendants possessed exclusive knowledge of or access to material facts that Plaintiffs could not have known or discovered with reasonable diligence, and alleges that Defendants knowingly and actively misrepresented the nature of the Engines' defect and the efficacy of warranty repair work. *See supra* Section II.B.1.; (Dkt. No. 1 at 13–14, 18, 20–23). Thus, Plaintiffs' complaint sets forth factual allegations which may establish that the applicable statutes of limitations may not bar Plaintiffs' claims for breach of implied warranty. *See Supermail Cargo*, 68 F.3d at 1207. Accordingly, Defendants' motion to dismiss is DENIED on this ground.

### 3. Consumer Fraud Claims

Washington, Illinois, South Dakota, and Florida prohibit unfair or deceptive acts or practices in the conduct of trade or commerce. *See* Wash. Rev. Code § 19.86.020; 815 Ill. Comp. Stat. 505/2; S.D. Codified Laws § 37-24-6; Fla. Stat. § 501.202(2). The relevant statutes generally define "trade" and "commerce" as the sale of assets or services as well as related advertising and distribution. *See* Wash. Rev. Code § 19.86.010(2); 815 Ill. Comp. Stat. 505/1(f); S.D. Codified Laws § 37-24-1(13); Fla. Stat. § 501.203(8). Washington, South Dakota, and Florida set four-year statutes of limitations to claims of consumer fraud while Illinois sets a three-year statute of limitations, all of which begin to run after a cause of action accrues. *See* Wash. Rev. Code. § 19.86.120; S.D. Codified Laws § 37-24-33; Fla. Stat. § 95.11(3)(f); Ill. Comp. Stat. § 505/10a(e). In Washington, Illinois, and South Dakota, a consumer fraud cause of action accrues when the aggrieved party discovers the facts constituting the unlawful conduct. *See Reeves v. Teuscher*, 881 F.2d 1495, 1501 (9th Cir. 1989); *Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, 758 F. Supp. 2d 596, 604 (N.D. Ill. 2010); S.D. Codified Laws § 37-24-33. Florida courts have held that Fla. Stat. § 95.11(3)'s silence on the applicability of the delayed discovery rule means that the doctrine does not apply to causes of action for unfair and deceptive trade practices. *See Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*, 793 So. 2d 1127, 1127–29 (Fla. Dist. Ct. App. 2001). But the Florida Supreme Court has stated that "the statute of limitations may be tolled when it can be shown that fraud has been perpetrated on the injured

party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury." *Nardone v. Reynolds*, 333 So.2d 25, 39 (Fla. 1976); *see Hearndon v. Graham*, 767 So.2d 1179, 1184–85 (Fla. 2000) (clarifying difference in accrual of an action and tolling of statute of limitations under Florida law).

Here, Defendants argue that Plaintiffs' consumer fraud claims are untimely under the applicable statutes of limitations because the statutes began to run upon Plaintiffs' purchase of their Vehicles. (*See* Dkt. No. 25 at 20–22.) It is true that each of Plaintiffs' consumer fraud claims allege that Defendants failed to reveal material facts and information about the Engines at the time Plaintiffs bought their Vehicles. (*See* Dkt. No. 1 at 26–27, 34–35, 40–41, 50–51.) But Plaintiffs also allege that Defendants were aware of the defect in the Engines prior to selling them and possessed exclusive knowledge of or access to material facts that were not known or reasonably discoverable by Plaintiffs. (*Id.* at 13–14.) And Plaintiffs state that Defendants continued to prevent them from discovering the alleged defect when Vehicles were brought in for warranty repairs. (*Id.* at 18, 20–21.) Thus, Plaintiffs have asserted that Defendants knowingly and actively misrepresented the nature of the Engines' alleged defect well beyond the time Plaintiffs purchased the Vehicles. Such allegations establish a plausible claim that Plaintiffs were precluded from discovering the facts underlying their consumer fraud claims and that Plaintiffs' claims did not begin to accrue until after their purchase of the Vehicles at issue. *See Supermail Cargo*, 68 F.3d at 1207; *Reeves*, 881 F.2d at 1501; *Leonel & Noel Corp.*, 758 F. Supp. 2d at 604; S.D. Codified Laws § 37-24-33; *Nardone*, 333 So.2d at 39. Accordingly, Defendants' motion to dismiss is DENIED on this ground.

    *4. Breach of Implied Warranty in Tort under Ohio Law*

Defendants assert that Plaintiffs' implied warranty in tort claim arising under Ohio law is untimely. (*See* Dkt. No. 25 at 24–25.) Defendants argue that Plaintiffs' cause of action accrued soon after Plaintiff Bowes purchased the Vehicle at issue but would have needed to "accrue no later than November 5, 2017" to be timely. (*Id.*)

Under Ohio law, "[i]mplied warranty in tort is a common-law cause of action that imposes liability upon a manufacturer or seller for breach of an implied representation that a product is of good and merchantable quality, fit and safe for its ordinary intended use." *White v. DePuy, Inc.*, 718 N.E.2d 450, 454 (Ohio Ct. App. 1998) (internal quotations omitted). Implied warranty in tort claims are subject to a two-year statute of limitations. *See U.S. Fid. & Guar. Co. v. Truck & Concrete Equip. Co.*, 257 N.E.2d 380, 384–85 (Ohio 1970) (citing Ohio Rev. Code § 2305.10). Generally, "[f]or implied warranty in tort claims based on defective products . . . the loss occurs at the point at which the alleged defect manifests, rather than the point at which the sale is made." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 866 (S.D. Ohio 2012). And under Ohio law, a "statute of limitations may be tolled where there is some conduct of the adverse party, such as a misrepresentation, which excludes suspicion and prevents inquiry." *Bryant v. Doe*, 552 N.E.2d 671, 675 (Ohio Ct. App. 1988).

As discussed above, Plaintiffs' complaint explicitly pleads the doctrines of equitable estoppel and equitable tolling, alleges that Defendants possessed exclusive knowledge of or access to material facts that Plaintiffs could not have known or discovered with reasonable diligence, and alleges that Defendants knowingly and actively misrepresented the nature of the Engines' defect and the efficacy of warranty repair work. *See supra* Section II.B.1.; (Dkt. No. 1 at 13–14, 18, 20–23). Thus, Plaintiffs' complaint sets forth factual allegations which may establish that the statute of limitations applicable to Plaintiff Bowes's claim for breach of implied warranty in tort under Ohio law may be tolled. *See Supermail Cargo*, 68 F.3d at 1207. Accordingly, Defendants' motion to dismiss is DENIED on this ground.

**C.     Implied Warranty Claims**

Defendants assert that PACCAR disclaimed all implied warranties and therefore Plaintiffs' claims for breach of implied warranty must be dismissed. (*See* Dkt. No. 25 at 22.) Defendants' argument is premised on language contained in the limited warranties attached to their motion to dismiss. (*See id.*) (citing Dkt. No. 25-1). As discussed above, the limited

warranties attached to Defendants' motion to dismiss are not properly before the Court and thus the Court will not consider them in ruling on Defendants' motion to dismiss. *See supra* II.B.1. n.1. Accordingly, Defendants' motion to dismiss is DENIED on this ground.

### D. Plaintiff Bowes's Warranty Claims

Defendants argue that Plaintiff Bowes's claims for breach of warranty must be dismissed because the allegations in Plaintiffs' complaint do not establish a plausible claim that he was the first purchaser of the Vehicle at issue. (*See* Dkt. No. 25 at 23–24.) The base warranty states that "[t]he PACCAR MX-13 Engine is warranted directly to the first purchaser or first lessee by PACCAR." (Dkt. No. 1-2 at 2.) Plaintiffs' complaint alleges that "[o]n or about June, 2015, Bowes purchased a 2012 Kenworth/Peterbilt Vehicle." (Dkt. No. 1 at 18.) The complaint does not contain allegations establishing that Plaintiff Bowes was not the first purchaser of the Vehicle, despite the difference in the date of purchase and the model date of the Vehicle. (*See id.* at 7, 18.) And unlike in *S.L. Anderson & Sons, Inc. v. PACCAR Inc.*, C18-0742-JCC (W.D. Wash. 2018), Plaintiffs do not concede that Plaintiff Bowes is not the first purchaser of the Vehicle at issue. *Compare id.*, Dkt. No. 51 at 15 *with* (Dkt. No. 39 at 26). Therefore, the allegations in Plaintiffs' complaint establish a plausible claim that Plaintiff Bowes was the first purchaser of his Vehicle, and Defendants' motion to dismiss is DENIED on this ground.

### E. Ohio State Law Claims

#### 1. *Purchase of Vehicle in Ohio*

Defendants assert that Plaintiffs have failed to establish a plausible claim that a Vehicle at issue in this litigation was purchased in Ohio and therefore "there is not even an arguable basis for Ohio law to apply, and Plaintiffs' claims under Ohio law should be dismissed." (Dkt. No. 25 at 24.) But Plaintiffs' complaint states that "Plaintiff Bowes is a citizen and resident of Illinois, having purchased most if not all of his subject vehicles in the State of Ohio," that "[o]n or about June, 2015, Bowes purchased a 2012 Kenworth/Peterbilt Vehicle," and that the alleged defect existed at the time of sale. (Dkt. No. 1 at 7, 18.) Plaintiffs' complaint does not allege that

Plaintiff Bowes purchased other Vehicles relevant to this litigation. Therefore, when read together, the allegations in Plaintiffs' complaint plainly contradict Defendants' assertion that "there is no allegation that the specific vehicle at issue was purchased" in Ohio. (*See* Dkt. No. 25 at 24.) Accordingly, Defendants' motion to dismiss is DENIED on this ground.

        2.   *Viability of Common Law Tort Claims*

Defendants argue that Plaintiffs' claims for breach of implied warranty in tort and for negligent design, manufacturing, and engineering under Ohio common law are not cognizable because Plaintiff Bowes purchased his Vehicle for commercial use and Plaintiffs seek purely economic damages. (Dkt. No. 25 at 25–26.)

A federal court applying a state's law must apply the law as it believes the state's supreme court would. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). If there is no controlling state supreme court decision, the court "must predict how the [state supreme court] would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Id.*

Under Ohio law, "commercial buyers cannot recover in tort for economic loss." *Trgo v. Chrysler Corp.*, 34 F. Supp. 2d 581, 594 (N.D. Ohio 1998) (citing *Midwest Ford, Inc. v. C.T. Taylor Co.,* 694 N.E.2d 114, 116–19 (Ohio Ct. App. 1997)); *see Apostolos Group, Inc. v. BASF Constr. Chems., LLC*, 2011 WL 1847723, slip op. at 3–6 (Ohio Ct. App. 2011). The Ohio Supreme Court has not ruled on the issue of "whether, absent privity of contract, a plaintiff can recover purely economic losses under tort theories" but has strongly implied that it would depart from its prior decisions holding that such plaintiffs could do so. *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 635 n.7 (Ohio 1989).

Following the Ohio Supreme Court's statement in *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624 (Ohio 1989), Ohio courts of appeal reached divergent conclusions as to whether a commercial party plaintiff not in privity can recover purely economic losses in tort. *See Midwest Ford, Inc. v. C.T. Taylor Co.*, 694 N.E.2d 114, 117 (Ohio Ct. App. 1997) ("The

ORDER
C19-1794-JCC
PAGE - 15

issue before this court is whether [a claim for breach of an implied warranty in tort] should be available to commercial buyers of products who claim purely economic loss from product suppliers with whom they are not in privity. In answering in the negative, we leave Ohio product liability law as we found it."); *Ohio Dep't of Adm. Serv. v. Robert P. Madison Int'l, Inc.*, 741 N.E.2d 551, 555–58 (Ohio Ct. App. 2000) (finding that "a consumer, commercial or not, can maintain a claim for breach of implied warranty/strict liability [in tort] against a manufacturer, not in privity, for purely economic loss."). Subsequently, the Sixth Circuit reviewed Ohio caselaw and concluded that under Ohio law "commercial parties lacking privity, as opposed to non-commercial parties, would be foreclosed from recovering economic losses." *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028–30 (6th Cir. 2003) (collecting cases); *see Nat'l Interstate Ins. Co. v. Motor Coach Indus., Inc.*, 2012 WL 264577, slip op. at 3 (N.D. Ohio 2012) (collecting cases) ("*Ohio Department of Administrative Services* apparently has never been followed and directly contradicts other Ohio cases which refuse to extend tort-based causes of action to commercial buyers not in privity who are seeking to recover economic losses." . . . "The Sixth Circuit has specifically rejected the holding on *Ohio Department of Administrative Services*."); *but see Roxy Home Improvement, LLC v. Mercedes-Benz USA, LLC*, 2018 WL 1705800, slip op. at 4 (N.D. Ohio 2018) (citing *Chemtrol*, 537 N.E.2d at 635; *Ohio Dep't of Adm. Serv.*, 741 N.E.2d at 558; *HDM Flugservice GmbH*, 332 F.3d at 1029; *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 50 N.E.3d 955, 966 (Ohio Ct. App. 2015)) (noting that "Ohio courts have held that a commercial or non-commercial consumer may maintain tort claims against a manufacturer, not in privity, for purely economic loss" before finding that "[a]s commercial consumers in privity with MBUSA, plaintiffs cannot maintain tort claims against manufacturer MBUSA for purely economic loss.").

      Here, Plaintiffs allege that Defendant "PACCAR is an international manufacturer of heavy-duty commercial vehicles," that the Engines were designed to comply with the "EPA 2010 Emission Standard applicable to heavy-duty, on-highway diesel engines," and that Engines'

alleged defect "renders the Vehicles unreliable transportation and unsuitable for ordinary commercial use." (Dkt. No. 1 at 8, 11.) Plaintiffs acknowledge that "Plaintiff Bowes, as a third-party beneficiary of contracts between Defendants and their dealers . . . lacks . . . privity with PACCAR . . . ." (Dkt. No. 39 at 28) (citing Dkt. No. 1 at 45). And Plaintiffs bring Ohio common law tort claims for breach of implied warranty in tort and negligent design, engineering, and manufacturing to recover economic damages. (Dkt. No. 1 at 44–46.)

The complaint's allegations demonstrate that Plaintiff Bowes purchased the Vehicle at issue as a commercial party, was not in privity with Defendants when he did so, and now seeks to recover economic damages under tort theories of liability. (*See* Dkt. No. 1 at 8, 11, 44–46, 51–52.) Given the Ohio Supreme Court's implied rejection of this method of recovery, the Sixth Circuit's analysis of relevant Ohio caselaw, and the weight of Ohio courts of appeals' decisions on this issue, the Court finds that the Ohio Supreme Court would conclude that Plaintiff Bowes's status as a commercial party not in privity with Defendants precludes him from recovering purely economic damages under tort theories of recovery. *See Gravquick A/S*, 323 F.3d at 1222; *Chemtrol Adhesives*, 537 N.E.2d at 635 n.7; *HDM Flugservice GmbH*, 332 F.3d at 1028–30; *Midwest Ford*, 694 N.E.2d at 117; *Nat'l Interstate Ins. Co.*, 2012 WL 264577, slip op. at 3. Accordingly, Defendants' motion to dismiss is GRANTED as to Plaintiffs' claims for breach of implied warranty in tort and negligent design, engineering, or manufacturing arising under Ohio law.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 25) is GRANTED in part and DENIED in part. Plaintiff Bowes's claims for breach of implied warranty in tort and negligent design, engineering, or manufacturing arising under Ohio law are DISMISSED without prejudice and with leave to amend. If Plaintiffs choose to file an amended complaint, they must plead additional allegations that cure the deficiencies identified in this order. The amended complaint must be filed within 30 days of the issuance of this order. If filed, the amended

1 | complaint shall only include additional allegations regarding the dismissed claims.

2 | DATED this 11th day of June 2020.

*/s/ John C. Coughenour*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C19-1794-JCC
PAGE - 18